**STATE of Missouri, Respondent,**

**v.**

**Ralph Carl DeCLUE, Appellant.**

**No. 51405.**

Supreme Court of Missouri,
Division No. 2.

March 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, James T. Buckley, Sp. Asst. Atty. Gen., Sedalia, for respondent.

Michael J. Trombley, Columbia, for appellant.

FINCH, Judge.

Defendant was found guilty of obtaining property and services by means of a check

drawn, with intent to cheat and defraud, on a bank in which he knew he had no funds. The information also charged defendant under the Habitual Criminal Act. The court found he had three prior felony convictions and sentenced him to seven years' imprisonment.

The charge against defendant on the check was based on § 561.450 (all references are to RSMo 1959 and V.A.M.S.). The language in the section with which we are concerned is as follows: "Every person who, with the intent to cheat and defraud, shall obtain * * * from any other person, or persons, any money, property or valuable thing whatever * * * by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds * * * shall be deemed guilty of a felony * * *."

The State's evidence will support this statement of facts: Defendant was paroled from the Missouri State Penitentiary to the Parole Officer in Boone County about July 1, 1963. He began work in Columbia, with the idea of enrolling in the University in September. He worked at the Journalism School and on July 23 received a loan of $100.00 from Dean English, to be repaid from subsequent pay checks. On July 24 defendant took the check to the Boone County National Bank. He opened an account by depositing $25.00, receiving the other $75 00 in cash. On the same day, before leaving the bank, defendant drew a check against the account for $25.00 which he cashed at the bank. This depleted and closed out the account and at the end of business on July 24, defendant had no funds in the Boone County National Bank.

On the same day, defendant deposited $50.00 in the Columbia Savings Bank. He drew a check against the account for $5.00, leaving a balance of $45.00. Defendant had opened an account in this bank on July 16 by depositing $5.00, but he drew five $1.00 checks and the account was exhausted on July 19 when the last $1.00 check was paid.

Defendant owned a 1956 Ford and on the morning of Friday, July 26, he took it to Crane's Auto Service where he requested repair of the transmission and replacement of the hood. Nothing was said about terms of payment or credit and when defendant returned late that afternoon for the repaired automobile, he was presented with a bill for $81.15 for parts and labor. Defendant wrote a check dated July 26, 1963, for $81.15 to Crane's Auto Service on the Boone County National Bank. Defendant did not request that the check be held and did not state that he had no money in the bank. He simply wrote and delivered the check in payment of the statement for parts and labor. Defendant had made no further deposits in the Boone County National Bank and on July 26, 1963, he had no funds on deposit in that bank.

Crane's Auto Service deposited the $81.15 check in the Columbia Savings Bank. The evidence is not clear as to whether this was on Monday or Tuesday. On Tuesday, July 30, it was endorsed by the Columbia Savings Bank and presented to the drawee bank. Later in the day word was received by Crane's Auto Service from the Boone County National Bank that the check was not being honored. It was returned to the garage marked "Acct. Closed." This notation was placed thereon by the bank's bookkeeping department. An officer of the bank testified that defendant had no funds in the Boone County National Bank after the account was closed out on July 24 and he had no funds in the bank on July 26, the date of the $81.15 check, or on any date thereafter.

Meanwhile, on Saturday, July 27, defendant and his fiancee had driven to St. Louis and Graniteville to visit, returning early in the afternoon on Monday, July 29. Shortly thereafter defendant was arrested by the police on a probation and parole violation warrant issued by the Parole Officer for leaving Boone County contrary to the conditions of his parole. A second warrant issued by the Parole Officer later that day

added as a reason that defendant was suspected of giving several bad checks.

Defendant testified that he thought the $25.00 check cashed by him on July 24 was on the Columbia Savings Bank rather than the Boone County National Bank and he did not know he had depleted his account in the Boone County National. He further testified that during this period of time his fiancee had $150.00 of his money which he had turned over to her to hold for him and that he had $51.00 in cash on his person when he was arrested.

On cross-examination defendant identified three checks for $25.00 each, all dated July 24, 1963, and payable to Cash which he wrote on the Boone County National Bank. One was endorsed by Gerbes Super Market, Inc., one by The Missouri Store Co., and one by the University Book Store. Two are marked "Acct. Closed" and one "Not Sufficient Funds." Defendant also identified three checks drawn by him on the Boone County National Bank dated July 25, 1963, all payable to Cash, for sums of $25.00, $50.00 and $50.00, respectively. These bore endorsements of The Missouri Store Co., University Book Store and The Great Atlantic and Pacific Tea Co., Inc., and all three were stamped "Not Sufficient Funds." Defendant also identified a check drawn by him on the Columbia Savings Bank dated July 16, 1963, to Cash for $25.00. It was endorsed by Glenn's Cafe and is marked "Acct. Closed."

The first point for consideration is whether defendant's motion for a directed verdict of acquittal should have been sustained. This involves primarily an examination of defendant's assertion that the State failed to prove an intent on the part of defendant to cheat and defraud.

There can be no question but that defendant issued the check for $81.15 to Crane's Auto Service in return for which he received parts and services used in repairing his automobile. It is clear that on July 26, 1963, the day the check was dated and issued, defendant had no funds in the bank on which it was drawn.[1] There was ample evidence from which the jury could have found that defendant knew he had no funds in the Boone County National Bank at the time he drew the check in question. Defendant had deposited only $25.00 on July 24 and he had withdrawn that amount by a check written and cashed at the bank on the same day. The evidence so established, and defendant, when questioned about Exhibit 4 (the $25.00 check on the Boone County National Bank which he cashed while in the bank that day), admitted that such was the case. His only excuse or justification for claiming that he did not know that he had completely exhausted the account on the 24th was his statement that he thought the check for $25.00 which he wrote and cashed on the 24th was on the Columbia Savings Bank. The jury could and obviously did disbelieve such explanation. (If this had been true, the six other checks written on the 24th and 25th amounted to $200.00, whereas the only deposit ever made was $25.00.) There was ample evidence, therefore, to show knowledge on the part of defendant that the check to Crane's was issued on a bank in which he had no funds.

This leaves only the question of whether there was sufficient evidence of intent to cheat and defraud. There was no oral statement by defendant to Crane's when the check was given to the effect that defendant had the money in the bank and that the check would be paid on presentation. Such an affirmative representation is not necessary. The mere issuance and delivery of the check constitutes such a representation. We so held in State v. Griggs, Mo., 236 S.W.2d 588, 590, and State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, 205. Under the facts of this case, the issuance and delivery of the check was a false representation and the jury could have so found. Was it a false representation made

1. For convenience, we sometimes refer to this type check as a no funds check.

with intent to cheat and defraud? Evidence of six other checks issued by the defendant on the same bank on the two days preceding July 26 were introduced by the State for the purpose of showing such intent. Defendant raises a question as to their admissibility, which we will consider later. Even without those other checks being in evidence, we hold that under the facts of this case the jury could find an intent on the part of the defendant to cheat and defraud from the issuance and delivery of the no funds check. Not only did defendant have no funds in the drawee bank; he had made no arrangements with the bank whereby the check would be honored on presentation. He simply knowingly gave a check on a bank where he had no funds. The jury could, under such state of facts, find from defendant's actions an intent on his part to cheat and defraud. Such question of intent is determined as of the time of the issuance of the no funds check, not, as defendant suggests, as of the time of presentation for payment at the bank. State v. McWilliams, Mo., 331 S.W.2d 610, 612.

■■ This is not a case involving an insufficient funds check under § 561.460, wherein such questions as subsequent diminution of the account by other checks, payment of previous overdrafts by the bank, deposits made between the date of the check and the time of its presentation, and similar questions might arise. It was an insufficient funds check, not a no funds check, with which the court was dealing in State v. Taylor, 335 Mo. 460, 73 S.W.2d 378, 95 A.L.R. 476, cited by defendant, where something was said to the effect that the test of sufficiency of the check comes at the time of its presentation for payment. We are considering only the question of intent with reference to a no funds check under § 561.450. Since this intent is determined as of the time when the check is issued in return for "money, property or valuable thing," the fact that defendant and his fiancee had enough cash which could have been deposited to create an account from which the check could have been paid

was no defense (State v. McWilliams, supra, 331 S.W.2d 613) and did not affect the question of whether there was sufficient evidence to support the verdict.

■ This conclusion is not altered by the the provisions of § 401.185, cited by defendant as indicating that a check only becomes an instrument for business transactions upon being presented for payment. Said statute provides that, "A check is a bill of exchange drawn on a bank payable on demand." This section is taken from the Uniform Negotiable Instruments Act and pertains to the nature of a check and rights therein and created thereby, but does not determine when and if an offense is committed under § 561.450. The latter section covers not only no funds checks but also bogus checks, instruments or devices referred to as "the confidence game," etc., and the statute relates to the time of issuance or use of the instrument or device as the time of the offense and the time to determine the intent to cheat or defraud.

We have read all the cases cited by defendant, but do not consider it necessary to analyze and distinguish most of them. The case said by defendant to be closest to this one on the facts is State v. Scott, Mo., 230 S.W.2d 764. An examination of the opinion therein shows substantial differences. The check involved in the Scott case was deposited by payee in his local bank in King City, Missouri, It was a check for $4.00 drawn on the First State Bank of Leoti, Kansas. Later, the check was returned to the payee by the King City Bank with a penciled notation thereon of "No Acct." As the opinion points out, there was no evidence as to whether there was in fact a First State Bank of Leoti, Kansas, or whether defendant had any funds in that bank, or the status of such account if he did, or whether defendant knew if he had any funds in said bank. There was no evidence other than the unexplained penciled notation as to why the check was not paid. The opinion quite properly held that the evidence was not

sufficient to support a judgment of conviction, and the case was reversed and remanded. The proof which was missing in the Scott case was present in this case.

■ We hold that the State made a submissible case, that the evidence was sufficient to sustain the conviction, and that defendant's motion for a directed verdict was properly overruled.

Defendant next contends that error was committed in admitting in evidence Exhibits 8 through 14.

Exhibit 8 was a check dated July 16, 1963, for $25.00, admittedly drawn by defendant on the Columbia Savings Bank. It was offered on the question of intent. The transcript discloses that it was admitted in evidence without objection. There is nothing before us for review with reference to that exhibit.

■ Exhibits 9 through 14 were the six checks referred to previously herein which were drawn by defendant on the Boone County National Bank on July 24 and 25, 1963, all of which were identified by defendant on cross-examination as checks which he had written. These checks were offered by the State to prove intent on the part of the defendant to cheat and defraud. This court consistently has held in false pretenses cases that evidence of similar offenses, if not too remote in time, are admissible in evidence to prove intent to cheat and defraud. State v. Hartman, supra; State v. McWilliams, supra; 78 A.L.R.2d 1359. Defendant recognizes this rule but claims that Exhibits 9 through 14 are inadmissible under that doctrine. This contention seems to be based on the fact that the recipients of other checks offered in evidence in the Hartman and McWilliams cases testified that defendant therein had received merchandise and cash therefor. Defendant points out that there was no evidence that defendant received money or merchandise in return for Exhibits 9 through 14 and that there was no

showing that said checks were presented for payment and not honored. We are of the opinion that this makes no difference. Actually, evidence that a defendant has committed or *attempted* to commit similar offenses, if not too remote, is admissible to prove the criminal intent of the accused. State v. Stegall, Mo., 353 S.W.2d 656, 658. The defendant's own testimony recognized that he had written and issued checks identified as Exhibits 9 through 14, inclusive, and he identified the endorsements on the backs of said checks indicating that said checks were negotiated at The Missouri Store Co., University Book Store, Gerbes Super Market, and The Great Atlantic and Pacific Tea Co. Proof offered in the case established that defendant had no funds in the Boone County National Bank. Certainly that proof was sufficient at least to show an *attempt* on the part of the defendant to obtain merchandise or money on checks issued on a bank in which he had no funds. That makes them admissible. Defendant argues that said exhibits were circumstantial evidence and were inadmissible because they did not meet the test of being consistent with the hypothesis of defendant's guilt, and inconsistent with every reasonable hypothesis of innocence. This position overlooks the fact that the case against defendant was not circumstantial. There was direct evidence of the act of defendant in giving the check in return for parts and labor and direct evidence that he had no account in the Boone County National Bank. The other checks were offered solely as bearing on the intent with which defendant issued the check on which he was being prosecuted. There was direct evidence that defendant had written these checks without funds in the bank on which they were drawn. The checks were not inadmissible under the circumstantial evidence rule.

Defendant also complains that the trial court erred in overruling challenges for cause directed at two prospective jurors on voir dire examination. We will con-

sider only the challenge to juror R. E. Lucas, Jr., since we have concluded that such challenge should have been sustained and the defendant is entitled to a new trial on that account.

Members of the jury panel were asked about their experience with no funds or insufficient funds checks. Mr. Lucas spoke up and said that they probably received more such checks in their business than anyone in Columbia. Asked whether this would keep him from considering the case in an impartial manner, he said, "Well, I would hope not; it would be rather difficult for me, however." In another answer he remarked that he felt he was "opinionated about improperly handled checks." Subsequently, when asked, "Do you feel that this would affect the verdict, your reviewing the verdict, on deciding on a verdict?" he replied, "I can only say again, and I'm very much in the same position as Mr. Roark, it would be difficult for me to make an impartial decision. I would hope that I would have character enough to do so." Then in answer to "You do have the propensity to perhaps be not completely impartial?" he said, "I would say so." The judge then took over the interrogation of Mr. Lucas, and the following occurred:

"THE COURT: Do you believe that you could sit in this case, in view of the type of case it is, listen to the evidence and the instructions of the Court, and return a verdict in accordance with the testimony and the Court's instructions?

"MR. LUCAS: I would certainly hope to be able to do that, yes.

"THE COURT: Without any prejudice toward the defendant?

"MR. LUCAS: I think it would be difficult for me to do, but I will certainly do what I can do.

"THE COURT: Do you feel it might take less evidence in this case, than it would in a type with which you had had

no experience to convince you beyond a reasonable doubt?

"MR. LUCAS: Would you word that again, please, Your Honor?

"THE COURT: I say, if it were not for this general type of offense which is involved here, do you think that it might take less evidence in this type, than in another type of offense to convice you beyond a reasonable doubt.

"MR. LUCAS: For me to render a guilty or non-guilty?

"THE COURT: That's right.

"MR. LUCAS: This I can't answer. I don't know."

Juror Lucas was being entirely frank and honest in answering the questions propounded to him. The closest he ever came to saying that he could and would render a fair and impartial verdict was, "I would certainly hope to be able to do that." What he said in answer to other questions as set out above shows that he was not qualified to serve in this case and that the challenge for cause should have been sustained.

■ The State cites and relies on § 546.150, the section dealing with challenge for cause of jurors in criminal cases, as indicating that juror Lucas was not disqualified. The rule has been established, however, that the statute is not all inclusive, and "[t]he fact that the statute enumerates certain grounds of disqualification does not exclude other grounds of incompetency." State v. Miller, 156 Mo. 76, 56 S.W. 907, 909. This rule was cited with approval and extended to the statute applicable to jurors in civil cases in Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, 103 A.L.R. 505. It was approved again in Barb v. Farmers Insurance Exchange, Mo., 281 S.W.2d 297, 301, wherein we said: "The fact that the statute enumerates certain grounds of disqualification does not exclude other grounds, and if for any reason, whether statutory or not, a venireman is not in a position to enter the jury box with an open

mind free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror."

 Many cases recognize that it rests within the sound judicial discretion of the trial judge to determine the qualifications of a venireman and that his decision thereon should not be disturbed unless there is a clear abuse of discretion. This does not mean, however, that this court should not and does not review the facts of each particular case, when such question is raised, to determine whether or not there was an abuse of discretion.

 In the case of Theobald v. St. Louis Transit Co., 191 Mo. 395, 90 S.W. 354, 359, this court said that "* * * there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced." That statement was made in a civil case, but certainly it is equally applicable to criminal cases. When a juror states, as did juror Lucas, that "it would be difficult for me to make an impartial decision" and that he has the propensity in these cases to "be not completely impartial," and on the question of whether he could decide without any prejudice toward the defendant, he says, "I think it would be difficult for me to do," and finally, when he says that he does not know whether the measure of proof required to convince him beyond a reasonable doubt in this type of case would be less than in any other case, he does not meet the test of being a disinterested and unprejudiced juror and should not be permitted to remain on the panel. If such a juror serves in the trial of a criminal case, the defendant thereby takes on a burden which he is not supposed to have. If such prospective juror does not serve only because he is removed on the basis of the exercise of one of defendant's peremptory challenges, the defendant thereby has fewer than the number of true peremptory challenges to which he is entitled.

 Certainly a clear line of demarcation cannot be drawn as to when a challenge for cause should or should not be sustained. Some cases will be ones where an appellate judge might have done differently but at the same time cannot say that there was an abuse of discretion. Each case must be judged on the particular facts in that case. Under the facts here involved, it is our judgment that a sound exercise of judicial discretion would have dictated that venireman Lucas be excused for cause.

The judgment is reversed and the cause remanded.

All of the Judges concur.