STATE of Missouri, Respondent,

v.

Louis Otto SPIDLE, Appellant.

No. 51808.

Supreme Court of Missouri,
Division No. 1.

April 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Norman A. Selner, Special Asst. Atty. Gen., Clayton, for respondent.

Louis Otto Spidle, pro se.

SEILER, Judge.

The information charged defendant with the offense of assault with intent to kill with malice. The jury found him guilty of assault with intent to kill without malice and assessed the maximum punishment, five years' imprisonment. Defendant has appealed.

Because it bears directly on the question discussed below of whether the trial court committed prejudicial error in overruling a challenge for cause of a juror, we point out first the principal witnesses in the case were the arresting trooper on one side and the defendant on the other. Their versions as to whether this was a case of assault or self-defense differed sharply, as shown by the following summary of their testimony:

The trooper, R. L. Owens, testified that while in uniform and driving an official highway patrol automobile, he stopped defendant at night on U.S. highway 36 near St. Joseph, Missouri, by means of his horn and red light, after observing defendant's car weaving on the highway, crossing the center line. The trooper took defendant back to the patrol car (he testified defendant was staggering) and there told him he was under arrest for careless and imprudent driving. While the two men were seated in the front seat, with Owens writing a traffic ticket, defendant swore at the trooper, lunged at him, swinging his right arm, striking the trooper two hard blows, first on the left ear and then at the junction of the right shoulder and neck, with an open pocketknife with a two-inch blade, penetrating the trooper's overcoat and shirt and inflicting two stab wounds requiring medical attention. The wound in the neck was two inches long and one and one-half inches deep. The trooper subdued defendant by striking him across the back of the head with his service revolver and kicking him out of the car down into a ditch. Assistance was then obtained by radio.

Defendant's version was that he was driving in a reasonable manner, on his own side of the highway at all times, not weaving, when the trooper without cause signalled him to stop. The trooper demanded to see his driver's license, gave no explanation or statement of authority, ordered him out of his car, cursed him, kicked him violently on the ankle, injuring it (defendant said this was why he staggered in going to the patrol car), forced him into the patrol car, told him he was going to take him to jail and then when defendant started to get out of the patrol car, hit him over the head with his gun, stunning defendant "pretty good", "I was knocked silly" (defendant's medical evidence was there was a laceration one and one-half inches long and one-quarter inch deep on the back of his head). Defendant got his knife out of his right-hand pocket some way and started fighting. He said he did not in any way intend to kill the trooper and his reason for getting his knife out was to defend himself. He testified he "was getting tired of that stuff" (referring to his being kicked and hit over the head). The fight ended when the trooper kicked him out of the car. Defendant testified the knife produced by the trooper as the one defendant dropped when the trooper hit him with the revolver was not his knife; that he did have a pocketknife which he used to defend himself, but that it was not as big as the knife in evidence and was of a different color.

The only one of defendant's contentions we need reach is that the trial court erred in overruling his challenge for cause of a prospective juror, who said he had first heard of the case by reading a newspaper

article, and whose voir dire interrogation then went as follows (emphasis ours):

"Q. (By the prosecuting attorney) From reading that article, did you form an opinion as to the guilt or innocence of this defendant?

"A. *In a manner of speaking, yes.*

"Q. Do you still have that opinion?

"A. I don't know all the facts—*I might be prejudiced toward the trooper.*

"Q. How do you mean?

"A. The way I read in the paper this man was assaulted and I couldn't see any reason for the assault.

"Q. Do you feel if you are chosen to sit on this jury, you could set all of that aside and listen to the evidence from the witness stand and base your verdict solely on that evidence?

"A. Yes.

"Q. You would give both the state and the defendant a fair trial?

"A. Yes sir.

" * * *

"Q. You could set aside all opinions formed prior to this date with reference to the guilt of the defendant?

"A. Yes sir."

Upon examination by defendant's counsel immediately following the above, the juror answered as follows:

"Q. (By defendant's counsel) I believe you said when you read the item you felt that people should not go around assaulting troopers?

"A. That is true.

"Q. Do you still feel he is guilty of assaulting Trooper Owen?

"A. *I guess so—I don't know the facts.*

"Q. Has anything happened to cause you to change your mind?

"A. *No.*

"Q. You are telling the State you can set this aside and go into the jury room with your mind free and clear of anything you may have read in newspaper items?

"A. *I think so.*

"Q. Are you sure you can set those aside?

"A. *I can't say 'yes' or 'no' until I have heard the facts."*

Thereupon defendant's counsel challenged the juror for cause and the court took over the questioning as follows:

"THE COURT: Would you convict a man and send him to the penitentiary from what you have read in the paper?

"A. No, sir.

"Q. I want to be sure we understand— if the evidence from the witness stand differed from what you saw in the newspaper, which would you believe?

"A. I would try to believe the truth.

"Q. Suppose there is a difference in the evidence you hear from the witness stand to what you read in the paper?

"A. *I believe I would have to take the officer's word for it.*

"Q. Are you going to believe what you have read in the paper, or what you hear here in the courtroom?

"A. *What I hear here.*

"Q. Would that cause you any problem?

"A. No sir."

Thereupon the court overruled the challenge but defendant's counsel continued examination as follows:

"Q. I still feel you are somewhat undecided on your position in this matter and it is somewhat difficult to overcome.

"A. Not difficult.

"\* \* \*

"Q. You just read there was an assault and you assumed there was no reason for it?

"A. All I can tell you is what I read in the paper.

"Q. From what you read in the paper you assumed the person supposed to have made the assault is guilty?

"A. *Yes.*"

Defendant's counsel thereupon renewed his challenge for cause, which was again by the court overruled.

We are not convinced the court exercised sound discretion in overruling the challenge for cause. One's initial reaction to the voir dire examination above quoted is that the trial court should have sustained the challenge. This feeling persists as the case is studied.

The juror first said that while he did not know all the facts, he might be prejudiced toward the trooper, that the way he read it in the paper the trooper was assaulted and he could not see any reason for the assault. He then said he could put all this aside, base his verdict solely on the evidence and give both sides a fair trial, but he then said he guessed he still felt defendant was guilty of assaulting the trooper, that he did not know the facts, that nothing had happened to cause him to change his mind; that he thought he could set this aside and go into the jury room with his mind free and clear, but he could not say yes or no until he heard the facts.

Then the court took over the questioning and the juror said no, he would not convict a man and send him to the penitentiary from what he read in the paper, but then said that if there were a difference in the evidence heard from the witness stand as to what he read in the paper, he "would have to take the officer's word for it", that he would believe what he heard in the courtroom (this would necessarily include the testimony of the trooper). The

juror never did disavow his apparent predeliction for taking the officer's word for what happened. Defendant's counsel then expressed the opinion the juror was somewhat undecided on his position and questioned him further. The examination concluded with the juror's agreeing with counsel that from what the juror read in the paper he assumed the person supposed to have made the assault "is guilty".

█ It is difficult to see how the juror, entering upon the trial of the case with the beliefs he had, was a fair and impartial juror. It cannot be said he "stood indifferent between the state and the defendant", State v. Bauerle, 145 Mo. 1, 46 S.W. 609, 612, any more than the juror in State v. Punshon, 133 Mo. 44, 34 S.W. 25, who said he was in sympathy with the defendant. We have not located a Missouri decision where the question was squarely presented as to whether a juror is disqualified who is strongly disposed to resolve factual issues in accord with the testimony of a particular prosecuting witness, but the situation in reverse was presented in State v. Thursby (Mo.Sup.) 245 S.W.2d 859, where it was held proper to sustain the state's challenge to two jurors who were of the view that in no circumstances should any weight be given to the testimony of a prostitute or a procurer. And in 50 C.J.S. Juries § 246, p. 1003, it is stated that "A juror is properly excluded who will not accord to the testimony of \* \* \* a particular person the weight to which it is legally entitled." It follows that a defendant in a criminal case should not have to start out with a juror who feels that in case of a dispute he would have to take the word of the prosecuting witness.

The usual instruction on credibility of the witnesses tells the jury to take into consideration the demeanor, manner on the stand, relationship to the parties, probability of statements of the witnesses, etc., with no authorization to give greater credence to any particular class or person. Defendant's testimony, for example, is to be weighed by

the same rules that govern the testimony of other witnesses. It clearly would not be proper to instruct the jury the trooper's testimony was entitled to greater weight, yet this was the way the juror in question seemed to feel about it prospectively.

Jurors have been held not qualified where material witnesses for the prosecution are their superior officers, as in State v. Langley, 342 Mo. 447, 116 S.W.2d 38, where deputy sheriffs were on the panel and in State v. Butts, 349 Mo. 213, 159 S.W.2d 790, 140 A.L.R. 1177, where a policeman was on the panel. One aspect of disqualification in such instances is that such jurors could not be expected to weigh the testimony of their superiors impartially. The same considerations are seen in the statutory provisions disqualifying jurors of certain kin. While the trooper here was not the juror's superior officer or kin, the juror nevertheless seemed disinclined to weigh the trooper's testimony impartially.

The subject of disqualification for cause of a juror in a criminal case was recently discussed by Finch, J., in State v. DeClue (Mo.Sup.) 400 S.W.2d 50, 57, where he said:

"In the case of Theobald v. St. Louis Transit Co., 191 Mo. 395, 90 S.W. 354, 359, this court said that '* * * there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced.' That statement was made in a civil case, but certainly it is equally applicable to criminal cases. * * *"

It is true the juror in the present case, after first giving answers indicating he had formed an opinion unfavorable to defendant and that he might be prejudiced in favor of the trooper, answered the prosecuting attorney and then the court that he could be fair and impartial and put all this aside, that it would not cause him any problem. But as pointed out in the Theobald case, supra, 90 S.W. 1. c. 363, where the juror had admitted he would have a preference toward the testimony of witnesses who were non-employees of the transit company over those who were employees, "Of what avail is it to a litigant, if, when such examination develops the fact that a prejudice or bias exists in the mind of the juror * * * such as will put either party to the necessity of producing stronger or better evidence than would be required if the suit was between persons as to whom the juror had no such bias or prejudice, the court permitted the question of fitness of the juror to be determined by the juror himself, declaring that he would be able to accomplish the almost human impossibility of fairly and impartially deciding the facts, notwithstanding the bias or prejudice he admitted existed in his mind. * * *" Or as said in Irvin v. Dowd, 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751, 759, "* * * No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows is often its father. * * *"

We are of the opinion that under the facts of this particular case, where it was largely the word of the trooper against the word of the defendant as to whether it was assault or self-defense, and where the juror entered the case with the opinion the person committing the assault was guilty and believed he would have to take the word of the officer, a sound exercise of judicial discretion would have dictated that the juror be excused for cause.

The judgment is reversed and the cause remanded.

All concur.