**STATE of Missouri, Respondent,**

v.

**James Edward LOVELL, Appellant.**

No. 57538.

Supreme Court of Missouri,
En Banc.

March 11, 1974

John C. Danforth, Atty. Gen., Richard S. Paden, Dan Summers, Asst. Attys. Gen., Jefferson City, for respondent.

James Edward Lovell, appellant, in pro per.

Christopher Dye (The Legal Aid and Defender Society of Greater Kansas City), Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

HIGGINS, Commissioner.

James E. Lovell, charged with possession of burglar's tools, was convicted by a jury which assessed his punishment at three years' imprisonment. Sentence and judgment were rendered accordingly. § 560.-115, RSMo 1969, V.A.M.S. (Appeal taken prior to January 1, 1972.)

Appellant contends first that he is entitled to a new trial on the ground the court erred in overruling his challenge for cause of a prospective juror which occurred during the voir dire examination:

"MR. KENNETH SIMON [defense counsel]: * * * now is there any reason now why any of you here now feel that you could not fairly and impartially try this case and give Mr. Bellemere's side and my side a fair and impartial trial, for any reason at all? * * * JUROR LEON F. BLACK: It's possible of all the things I read in the papers—and, to me, the policemen's hands are tied today, more or less tied, the things they're trying to do —I feel that I could judge right on this, but I don't know. * * *

"MR. SIMON. Mr. Black, is it some feeling you have that because of newspaper—events and crime that has occurred and that—you feel that these laws that favor a man should be loosened in some way, is that it? JUROR BLACK: All the evidence I gather from day to day, with the increase in the crime rate, and the policemen's hands are tied in many instances, I feel.

"MR. SIMON: So you feel a man charged with a crime has some sort— should have more of a burden? JUROR BLACK: I might feel that way, I don't know. * * * I would try to judge honest, but I might be affected.

"MR. SIMON: You might reflect current events in reducing your standards and requirements, isn't that right? JUROR

BLACK: Possibly so. MR. SIMON: All right. We appreciate your candor in the matter. It's only you can—that can decide.

"MR. BELLEMERE [assistant prosecuting attorney]: Mr. Black, * * * there isn't any question in this case—there won't become any question in this case—about strapping the police or anything like this, it's just a—just a set of facts. Now, this officer is going to testify here, and, of course, I'm sure Mr. Simon will ask the question later on to you, but the defendant can or cannot testify, and there should not be any presumption gained whether he does or he doesn't as to whether or not he is innocent. He doesn't have to testify. The burden is upon me, on the State, and the burden is beyond a reasonable doubt. Now, there will be an instruction by the Court to you—to all of you—about what this reasonable doubt means. And it—paraphrased down, it means substantial doubt. So there is a burden on the State. The State will either meet it or not, according to the jury. We're not talking about any other matter. And you really feel, based on—without getting led down a primrose path, that you couldn't sit here using all the common sense and knowledge that you've developed through your lifetime by both studying and just practical experiences of living, listen to all this evidence and just render a fair and impartial verdict based on the evidence here today? JUROR BLACK: I feel that I could, but I do have this in the back of my mind.

"MR. BELLEMERE: Well, now, we're not talking about strapping the law or anything like that in this matter, we're just talking about a set of facts, see. And now —so you don't have that problem here. You do have a problem about the facts, whether or not you believe as the State presents them. It is, like I say, something that a grown man can take into consideration, using all his knowledge. And, like the judge said before, we just—both sides, Mr. Simon and the defendant, as well as the State, are entitled to have you just lay it on the line and listen to the facts and reach a verdict. We don't want—JUROR BLACK: I think I could listen to the evidence and weigh it and judge righteously. * * *

"MR. SIMON: * * * Now, in connection with this issue, Mr. Black, the only question, of course, is whether you start—start both parties at the time, start them both equally. Are you willing to do that? That's the first thing.

"JUROR BLACK: Correct.

"MR. SIMON: And the second thing, will you make the State comply to the requirements of the law even though it disagrees with your feeling about what the law should be in a criminal case? JUROR BLACK: I guess so. * * * MR. SIMON: In other words, if the Court requires that you find proof beyond a reasonable doubt, even though you may think that's an unreasonable requirement or more than should be required in a criminal case, would you absolutely put your mind to that and require the State to follow that standard? JUROR BLACK: I think I could. MR. SIMON: Will you have trouble adhering to that standard? That's the problem. JUROR BLACK: Probably a little. MR. SIMON: You say possibly a little. All right. * * *

"THE COURT: The only question in this case, Mr. Black, is whether or not you can give this defendant a fair trial. Is there any reason why you cannot hear the evidence in the case and go by the instructions of the Court in deciding whether or not this defendant is guilty of the crime charged? No general discussion about crimes generally, the only question is whether or not this defendant is guilty under the evidence and the law. Is there any reason why you cannot give this defendant a fair and impartial trial under the evidence and the law? JUROR BLACK: I don't think so."

▉ A defendant is entitled to a full panel of qualified jurors before he makes peremptory challenges, and the court's discretion in ruling upon challenges for cause

to prospective jurors will not be disturbed unless it is so manifestly against the record of the voir dire examination as to show an abuse of discretion. State v. Land, 478 S. W.2d 290, 292 (Mo.1972). In exercising this discretion, the decision of the trial court should rest upon the facts stated by the juror with reference to his state of mind and should not be allowed to depend upon the conclusions of the juror whether he could or would divest himself of a prejudice he admitted to exist in his mind. State v. Jones, 384 S.W.2d 554, 558 (Mo. 1964).

■ The state of Mr. Black's mind as shown by his quoted answers is that he believed the hands of police officers were tied; that he might feel a defendant should have a greater burden in his own defense than that imposed upon him by the standard of reasonable doubt, and that he might have trouble adhering to that rule; that he would try to judge properly, but that he might be affected by his feelings, and they might remain in the back of his mind if he sat on the case. Only upon leading questions by the State's attorney and the court with respect to whether he knew of any reason why he could not give defendant a fair trial did he answer, "I don't think so." The only basis for the court's ruling is the conclusion or opinion of the juror himself, and the total examination shows doubt whether Mr. Black could have accorded defendant his right, a fair and impartial trial. With such doubt present, the trial court should have excused him upon defendant's challenge for cause; the failure to do so constitutes reversible error. State v. Spidle, 413 S.W.2d 509 (Mo.1967); State v. DeClue, 400 S.W.2d 50 (Mo.1966); State v. Land, supra.

In an effort to secure outright reversal, appellant contends the court erred in failing to sustain his motion for acquittal because the evidence was insufficient to support the verdict.

Patrolman Larry Jacks of the Kansas City Police Department arrested defendant and William Neighbors at about noon, February 26, 1971, at Ninth and Van Brunt, Kansas City, Jackson County, Missouri. Defendant was seated in the passenger side of a car borrowed by defendant from his ex-wife and being driven by Neighbors. At the time of arrest, Patrolman Jacks observed several tools, Exhibits 1–8, between defendant's feet on the floorboard of the car. Exhibit 1 was identified as a three-inch screwdriver which could be adapted for prying loose facings of windows, or to pry around a lock, or as a jimmy. It was bent from prying. Exhibit 2 was a four-inch screwdriver, useful along the same lines as Exhibit 1, but better because it was stronger and had a sharp edge. Exhibit 3 was a six-inch screwdriver which had been sharpened and was useful for the same purposes as Exhibits 1 and 2. Exhibit 4 was a pair of pliers which could be used to pull nails from a door facing. Exhibit 5 was a pry tool with curled end, very strong for prying and for pulling nails. Exhibit 6 was a strong ten-inch screwdriver with a broken tip, useful as the other screwdrivers but stronger and with more leverage. Exhibit 7 was another pair of pliers. Exhibit 8 was a small two-cell flashlight, useful in night burglaries. In the officer's opinion, based upon experience, Exhibits 1 through 8 were adaptable to criminal use, burglary.

Officer Jacks was familiar with defendant's reputation as a burglar and as an associate of burglars; and he had previously been convicted of burglary. Defendant's companion at the time of arrest, William Neighbors, was also known as a burglar and had been previously convicted of burglary.

Defendant's version was that he had no knowledge of how the tools got in the car and learned of them only upon arrest.

■ From the foregoing, a jury reasonably could find that defendant had "in his custody * * * tool[s] * * * nippers * * * punch * * * jimmy * * * or * * * material implement, instrument, or other mechanical device * * * adapted, designed, or commonly used for

breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind" in violation of Section 560.115, RSMo 1969. State v. Wing, 455 S.W.2d 457 (Mo.1970), cert. den. 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed. 2d 621; State v. Watson, 386 S.W.2d 24 (Mo.1964), cert. den. 381 U.S. 275, 85 S.Ct. 1458, 14 L.Ed.2d 431; State v. Lorts, 269 S.W.2d 88 (Mo.1954); State v. Crouch, 353 S.W.2d 597 (Mo.1962). Cf. State v. Young, 425 S.W.2d 177 (Mo.1968).

In another effort to secure outright reversal, appellant contends Section 560.115 "is so vague that it wholly fails adequately to inform the public of the conduct it seeks to prohibit and therefore is unconstitutional."

This matter was the subject of a pretrial motion to dismiss; however, the record does not show that it was ever presented to the trial court and it was not preserved for review in the motion for new trial as required by Rule 27.20(a), V.A.M.R.

■ In an effort to secure review of his allegation as a matter of "plain error" under Rule 27.20(c), V.A.M.R., appellant asserts that if the statute is vague as charged, the court lacked jurisdiction in this case. His argument is that "where a criminal statute is so vague that it fails to inform the public of exactly what conduct is prohibited, then that statute denies due process of law and is unconstitutional * * *."

Suffice to say that none of appellant's authorities, State v. McClary, 399 S.W.2d 597 (Mo.App.1966), State v. Wilbur, 462 S.W.2d 653 (Mo.1971), State v. Chadeayne, 323 S.W.2d 680 (Mo. banc 1959), State v. Taylor, 345 Mo. 325, 133 S.W.2d 336 (1939), State v. Hall, 351 S.W.2d 460 (Mo.App.1961), directly supports his assertion. Indeed, as acknowledged by appellant, "this court upheld the constitutionality of a similar statute, the forerunner of V. A.M.S., Section 560.115, in Ex Parte Roberts, 166 Mo. 207, 65 S.W. 726, 728 (1901)." The attack of Roberts was similar to that of this appellant in that it was directed at the first enactment of the present statute, Section 1892, RSMo 1899, and was made by asserting it violated Section 30 of the 1875 bill of rights which provided "that no person shall be deprived of life, liberty or property without due process of law."

Appellant contends the court erred in overruling his motion to suppress, and in admitting State's Exhibits 1 through 8 into evidence because they were unconstitutionally seized.

■■ This point is not for review because, as acknowledged by appellant, he "did not object [he affirmatively stated "no objection"] to the admission into evidence of these exhibits * * * and did not claim their admission as error in his Motion for New Trial." Rule 27.20(a), supra. In answer to another assertion of "plain error," it appears from the record that the exhibits in question were not the subject of a search and seizure at all, but were in plain view of the arresting officer in that he observed them "underneath the defendant's feet." Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Finally, appellant charges error in giving Instruction 6 "for the reason that said instruction weakened the presumption of innocence * * * and encouraged the jury to avoid their responsibility of sentencing appellant upon a finding of his guilt."

Instruction No. 6 covered defendant's presumption of innocence and the standard of reasonable doubt. The instruction and the attack are the same as in State v. Davis, 482 S.W.2d 486, 489 (Mo.1972), where the complaint was noted to have "been frequently raised and found not meritorious."

With respect to the second part of this allegation, suffice to say defendant could not have been prejudiced by Instruction 6 (nor by Instruction No. 9 on failure of the jury to agree on punishment, State v. Brown, 443 S.W.2d 805, 810–811 (Mo. banc 1969) ) because this jury did assess punishment.

For the failure to excuse juror Black, the judgment is reversed and the cause remanded.

PER CURIAM:

The Division One Opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

DONNELLY, C. J., and SEILER, MORGAN, and BARDGETT, JJ., concur. HOLMAN, J., dissents; FINCH, J., dissents in separate dissenting opinion filed; HENLEY, J., dissents and concurs in separate dissenting opinion of FINCH, J.

FINCH, Judge (dissenting).

I would affirm this conviction. Hence, I dissent.

I believe I would have been inclined to excuse Black under the circumstances, but that is not the test. As the principal opinion recognizes, the action of the trial judge is not to be disturbed unless his action was so manifestly against the record made on the voir dire as to show an abuse of discretion. In my judgment, the record does not so show.