STATE of Missouri, Plaintiff-Respondent,

v.

Jerry WATSON, Defendant-Appellant.

No. KCD 29669.

Missouri Court of Appeals, Western District.

March 3, 1980.

Ross Eshelman, Poague, Brock, Wall & Eshelman, Clinton, for appellant.

John Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, C. J., DIXON, PRITCHARD, SWOFFORD, SOMERVILLE and TURNAGE, JJ., and ROBERT R. WELBORN, Special Judge.

TURNAGE, Judge.

Jerry Watson was convicted of the statutory rape of his 15-year old stepdaughter and the jury assessed punishment at imprisonment for 10 years. The dispositive issue raised on this appeal is the refusal of the trial court to excuse two venirepersons on Watson's challenge for cause. Reversed and remanded.

This case was argued and submitted to a panel of this court and an opinion was adopted. That opinion was later withdrawn and this case was submitted to an expanded panel.

Watson contends the trial court abused its discretion in failing to excuse venirepersons Dody and Johnston on his challenge for cause. The examination of venireperson Dody was as follows:

MR. ESHELMAN: . . . Do any of you know Mr. Watson's family? His wife is Berniece, and they live or did live in Deepwater, Missouri.

(Juror Dody raised hand.)

MR. ESHELMAN: Mrs. Dody?

JUROR DODY: Yes.

MR. ESHELMAN: Do they buy groceries at your store?

JUROR DODY: Yes.

MR. ESHELMAN: Other than buying groceries at your store, do you know them?

JUROR DODY: No.

MR. ESHELMAN: Or anything about them?

JUROR DODY: No.

MR. ESHELMAN: Anything good or bad?

JUROR DODY: No.

MR. ESHELMAN: So, I take it by your answer that your knowing them from buying groceries would not affect your judgment in this case?

JUROR DODY: No.

MR. ESHELMAN: Do any of you know Ronda Williams? She is the alleged victim in this crime, alleged crime. She is 16 years old. She attends school at, I believe it is called Lakeland School, near Deepwater. Do any of you know her? (no answer.)

MR. ESHELMAN: She is the stepdaughter of the defendant. Mrs. Dody, do you know her?

JUROR DODY: Yes.

MR. ESHELMAN: And what would be your occasion for knowing her?

JUROR DODY: Just a customer in our store.

MR. ESHELMAN: Would that affect your judgment in this case?

JUROR DODY: I would really just as soon not serve on this, knowing all the parties, but—

MR. ESHELMAN: In other words, knowing that girl and knowing that this case is about her, would that affect your judgment in this case?

JUROR DODY: It could.

MR. ESHELMAN: Do you believe that that might prevent you from viewing the evidence in a completely fair and impartial manner?

JUROR DODY: It could.

\* \* \* \* \* \*

THE COURT: Mrs. Dody, you stated you knew the people, but do you feel you could sit as a jury member, listen to the evidence and base your decision upon the evidence heard from the witness stand

and instructions given by this Court? Could you do that?

JUROR DODY: Yes.

The entire examination of venireman Johnston was as follows:

MR. ESHELMAN: Mr. Johnston, do you have children?

JUROR JOHNSTON: Three, two boys and a girl.

MR. ESHELMAN: What is the age of the girl?

JUROR JOHNSTON: Twenty-three.

MR. ESHELMAN: Does the fact you have a girl cause you to view the evidence in this case differently than if you did not?

JUROR JOHNSTON: I think so.

MR. ESHELMAN: In what way might it affect your view of the evidence?

JUROR JOHNSTON: Might affect it.

MR. ESHELMAN: Do you fear that you would put that girl in place of the witness when you hear the witness testifying?

JUROR JOHNSTON: I don't know.

MR. ESHELMAN: So you can't promise me you could be fair and impartial when you heard the evidence, is that right?

JUROR JOHNSTON: That is right.

MR. ESHELMAN: You can't promise me that?

JUROR JOHNSTON: No.

\* \* \* \* \* \*

THE COURT: Mr. Johnston, I will ask you the same question. Could you listen to the evidence from the witness stand and instructions given by this Court and based on those two factors return a fair and impartial verdict?

JUROR JOHNSTON: I think so.

Watson contends the examination shows both of these people expressed a doubt that they could fairly and impartially hear this case and the court therefore abused its discretion in refusing to sustain the challenge for cause. The State first contends this matter is not properly preserved for review because the record does not show whether these two venirepersons served on the ultimate jury panel or wheth-er Watson was forced to use any of his peremptory challenges to remove them. State v. Morrison, 557 S.W.2d 445, 447 (Mo. banc 1977) makes it clear that a defendant need not show that he has exhausted his peremptory challenges or that he used a peremptory challenge to strike a venireperson in order to appeal the failure of the trial court to sustain a challenge for cause. The court there reiterated the well settled law of this state that a defendant is entitled to a full panel of qualified jurors before he is required to make his peremptory challenges. The State next contends the court in Morrison, n. 2, p. 447, leaves open the question of whether or not a defendant can appeal a ruling on his challenge for cause when the record does not disclose whether the venireperson may have been stricken by the state. The record in this case does not show the jury panel and those stricken by Watson and the State, but when this point came up in oral argument, Watson's attorney offered to supplement the record by filing a certified copy of the plaintiff and defendant's jury list showing which party made peremptory strikes. The State did not object to this procedure. That record has now been filed with this court and shows that Watson exercised a peremptory challenge to strike both Dody and Johnston. Thus, the question left open in Morrison is not present in this case.

As pointed out in State v. Land, 478 S.W.2d 290, 292[1, 2] (Mo.1972) the area involving the challenge of venirepersons can not and should not be the subject of standardized or rigid rules. Each case must be judged on the particular facts in that case. However, a broad discretion is vested in the trial court in the matter of ruling on challenges for cause and an appellate court reviews the facts of each case to determine whether or not there has been an abuse of that discretion.

The examination of Dody and Johnston bears a marked similarity to the examination of the venireman in State v. Lovell, 506 S.W.2d 441 (Mo. banc 1974). In Lovell the venireman stated he felt from what he had

read in the papers that in criminal cases the hands of the police were tied. When asked if he felt that a person charged with a crime should have more of a burden, he stated, "I would try to judge honest, but I might be affected." In response to a lengthy question from the assistant prosecutor concerning his feeling and his ability to render a fair and impartial verdict, the venireman stated: "I feel that I could, but I do have this in the back of my mind." Later the venireman stated, "I think I could listen to the evidence and weigh it and judge righteously." Later, in response to a question by defense counsel, the venireman said that he thought he could put his feelings out of his mind and require the state to follow the standard of reasonable doubt. The next question was: "Will you have trouble adhering to that standard? That is the problem." The juror replied: "Probably a little." Thereafter, the court addressed the venireman and stated the only question in the case was whether or not the venireman could give the defendant a fair trial. The court asked if there was any reason he could not hear the evidence and the instructions of the court and give the defendant a fair and impartial trial under the evidence and the law, and the venireman stated, "I don't think so."

The court in discussing the action of the trial court in overruling the challenge for cause discussed the discretion vested in the trial court and stated at p. 444:

In exercising this discretion, the decision of the trial court should rest upon the facts stated by the juror with reference to his state of mind and should not be allowed to depend upon the conclusions of the juror whether he could or would divest himself of a prejudice he admitted to exist in his mind. *State v. Jones*, 384 S.W.2d 554, 558 (Mo.1964).

The court discussed the venireman's answers which revealed his state of mind that he might feel a defendant should have a greater burden in his own defense than that imposed upon him by the standard of reasonable doubt and that he might have trouble adhering to that rule but that he would try to judge properly, but that he might be affected by his feelings and that they might remain at the back of his mind if he sat on the case. The court then stated at p. 444[4]:

"Only upon leading questions by the State's attorney and the court with respect to whether he knew of any reason why he could not give defendant a fair trial did he answer, 'I don't think so.' The only basis for the court's ruling is the conclusion or opinion of the juror himself, and the total examination shows doubt whether Mr. Black could have accorded defendant his right, a fair and impartial trial."

The similarity between *Lovell* and this case is immediately apparent. Mrs. Dody said she knew Watson's stepdaughter and stated this could affect her judgment in the case. She further stated that it could prevent her from viewing the evidence in a completely fair and impartial manner. The only basis upon which the court could have overruled the challenge for cause to Mrs. Dody was her answer to the question posed by the court. As in *Lovell*, this was the conclusion or the opinion of Mrs. Dody herself whereas the total examination shows a decided doubt that she could be a fair and impartial juror.

The examination of Johnston shows an even stronger doubt that he could be a fair and impartial juror. Johnston clearly expressed his doubt that he could be a fair and impartial juror when he stated that he thought it would cause him to view the case differently than if he did not have a daughter and in stating that he might put his daughter in place of the victim in this case. He repeated his opinion that having a daughter might affect his view of the evidence, but then made it crystal clear that he could not be a fair and impartial juror when he stated clearly and unequivocally that he could not promise that he could be fair and impartial. The only possible basis for the overruling of the challenge for cause to venireman Johnston was again the answer to the court's question if he could return a fair and impartial verdict. John-

ston's response of "I think so" is the same as that in *Lovell* to the court's question with the omission of the "don't."

The examination of Johnston clearly reveals that he could not promise to be fair and impartial as a juror in this case. The State argues this was requiring too much of venireman Johnston to ask if he would promise to be a fair and impartial juror because people are not accustomed to speaking in absolutes. The logical result of the State's argument is to say that a person can be a little bit prejudiced and this is acceptable. This, of course, cannot be true. Venirepersons are sworn to tell the truth and to truthfully answer all questions propounded to them. The oath they take is not equivocal but is placed in absolute terms that the venireman will truthfully answer all questions. When counsel asked venireman Johnston if he could promise to be a fair and impartial juror, he was not asking the juror to be any more absolute than the juror had already sworn to be. The proposition was really very simple and venireman Johnston had no trouble in understanding that the question was whether or not he could be a fair and impartial juror. He stated he could not promise to be such a juror. There is no stronger way a venireman can tell the court and counsel that he will not be the kind of juror every criminal defendant is entitled to have.

In *State v. Spidle*, 413 S.W.2d 509, 513 (Mo.1967) the court quoted from *Theobald v. St. Louis Transit Company*, 191 Mo. 395, 90 S.W. 354, 359 (1905) as follows:

[T]he court permitted the question of fitness of the juror to be determined by the juror himself, declaring that he would be able to accomplish the almost human impossibility of fairly and impartially deciding the facts, notwithstanding the bias or prejudice he admitted existed in his mind.

The court in this case did exactly the same.

■ As in *Lovell* the only possible ground for overruling the challenge for cause to Johnston was his response to the court's question in the face of his unequivocal statement that he could not be fair and impartial. Viewing Johnston's examination

as a whole, as required by *Lovell*, this court is left with the unmistakable feeling that venireman Johnston could not be a fair and impartial juror. Leaving him on the panel deprived Watson of his fundamental right to a full panel of fair and impartial venirepersons. This right was further abrogated when Watson was forced to use one of his peremptory strikes on Johnston. Because of this denial of a qualified panel of venirepersons in refusing to strike venirepersons Dody and Johnston for cause, the judgment is reversed and the cause is remanded for a new trial.

The other allegations of error made by Watson may not recur and need not be addressed. However, the parties are advised of these matters through the briefs and may conduct the new trial accordingly.

WASSERSTROM, C. J., and DIXON, SWOFFORD and SOMERVILLE, JJ., concur.

PRITCHARD, J., dissents and concurs in separate dissenting opinion of ROBERT R. WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge, dissents in separate dissenting opinion.

ROBERT R. WELBORN, Special Judge, dissenting.

I would not disturb the trial court's exercise of discretion in passing upon the qualifications of venire persons Dody and Johnston. In the case of Dody, the trial court could well have concluded that the answers which the majority rely upon as evidencing doubt as to her ability to hear the case impartially represented basically a reluctance to serve upon the jury and that the trial court's direct inquiry as to her ability to hear the case fairly disclosed her ability to sit as a juror.

Johnston's response was in reply to an effort on the part of defense counsel to extract a "promise" from the venireman. A question phrased in such terms may well be constructed to exact an obligation in favor of the party posing the question. Again the trial court was in a position to

see the interrogation, view the reaction of the persons involved and conclude that the answer to the court's question disclosed the state of mind of the venire person toward the proper exercise of his function. *State v. Daugherty*, 484 S.W.2d 236, 237–238[1] (Mo.1972).

I do not consider the replies of the venire persons here relied upon by the majority to have had the unequivocal character of the remarks of the venire person in *Lovell*, who well-nigh voluntarily stated his concern that " * * * policemen's hands are tied in many instances * * *." 506 S.W.2d 442. I do not consider *Lovell* controlling.

I therefore dissent.