STATE of Missouri, Respondent,

v.

Donald W. OWENS, Appellant.

No. 31830.

Missouri Court of Appeals,
Western District.

Aug. 11, 1981.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., SOMERVILLE, C. J., and SHANGLER, J.

SHANGLER, Judge.

The defendant Owens was convicted by a jury of robbery in the second degree and was sentenced to a term of five years imprisonment. The appeal contends error in the jury selection process and in the method employed at trial to identify the defendant.

The defendant and another robbed Tallen and Carty by means of a gun of the merchandise contents of their truck. The robbers took a number of digital watches from among those goods. The victims noted the license plate number of the van used by the robbers and one of them was captured by the police on that information. The defendant Owens and the other were identified from police photographs, and the defendant Owens separately was identified in a lineup by the victims as a perpetrator.

In the course of jury selection, counsel for the defendant posed to the venire inquiry as to whether the testimony of a police officer witness would be given more credit than that of other witnesses. Veniremen Kosloski and Roberts responded.

Venireman Kosloski disclosed that fully two-thirds of the Shriners Temple club he frequented were police officers, but he could not recall their names. Then this colloquy ensued:

Counsel: Do you know Detective William Mynatt or Officer Merle Hoffman?

Kosloski: The names are not familiar.

Counsel: Say you saw them and you recognized them. Would you find it hard to judge their testimony impartially?

Kosloski: (Nods head affirmatively.)

Counsel: And you won't know for sure if you knew them or not until you saw them?

Kosloski: I'd have to see them first.

Venireman Roberts disclosed that local police officers were his lodge friends and church attendants, and that a first cousin trained as a special policeman. Roberts at times discussed police work with them, and the impression developed of police work was: "[t]hey got almost as hard a job as I have." Then this colloquy ensued:

Counsel: Do you think that since the police will testify in this case and since so many of your friends and acquaintances are police officers, do you think that might affect you in judging this case?

Roberts: It's very possible. I could be acquainted—one name is familiar—

Counsel: Detective Mynatt or—

Roberts: Yes.

Counsel: That's familiar to you?

Roberts: Yes. I'd have to see him before I'd know.

Counsel: If you did see him and knew him, do you think you might tend to view his testimony in a different light?

Roberts: It's possible.

The defendant challenged both veniremen for cause, each on the ground that if a police officer a venireman knew were called as a witness, "[the venireman] would tend to be partial to [his] testimony." The court denied the challenges. We note that only the refusal of the Kosloski challenge was preserved for review as error. Thus, we examine the contention as to venireman Roberts only for plain error. In fact, Officer Mynatt was not presented to the jury, and the record gives no hint of recognition by either venireman of any police officer who testified. Thus, the defendant poses an error only hypothetical—a prejudice which might have been.

The administration of justice indeed demands that a litigant have a jury to try the cause without interest or prejudice as between the contenders. *State v. DeClue*, 400 S.W.2d 50, 57[13] (Mo.1966). Thus, a member of the venire may not

enter upon the trial of a case with the formed disposition to give a preferential belief to the evidence of any particular class or person. *State v. Spidle*, 413 S.W.2d 509, 512[1, 2] (Mo.1967). The bare possibility of a prejudice does not suffice to disqualify the juror or to override the discretion of the trial court to seat the venireman. *State v. Cheesebrew*, 575 S.W.2d 218, 221[1, 2] (Mo. App.1978); *State v. Cuckovich*, 485 S.W.2d 16, 22[11] (Mo.banc 1972). A prolonged friendship by a venireman with a witness for a party, of itself, does not sustain contention that the refusal of the challenge for cause by the trial court was an abuse of discretion—absent a clearly drawn prejudice. *State v. McMullin*, 576 S.W.2d 581 (Mo.App.1979). That application of principle applies with equal validity where the witness is an officer of the law. *State v. Watson*, 588 S.W.2d 20, 23[5, 6] (Mo.App. 1979).

■ It is where the court seats a juror with an actual bias against an interest of the litigant that the denial of the challenge for cause amounts to an abuse of discretion. *State v. Holt*, 592 S.W.2d 759, 767[8–10] (Mo.banc 1980). Thus, where the venireman expresses a fixed partiality toward peace officer testimony per se—as a generic class—or toward an actual witness, the bias of credibility contrary to the interest of the complainant-litigant disqualifies service as a juror. The cases cited by the defendant Owens all demonstrate that principle. In *State v. Spidle*, supra, the essential issue was the contention of the defendant that he acted in self-defense. The proof of that element pitted the testimony of the defendant against that of a state trooper. It was determined an abuse of discretion for the court to refuse to disqualify a venireman who declared that he "would have to take the officer's word for it" should the evidence vary. In *State v. Carter*, 544 S.W.2d 334 (Mo.App.1976), the abuse of discretion was in the retention as a juror a former patrolman who expressed a bias for the testimony of police officers in general. In *State v. Thrift*, 588 S.W.2d 525 (Mo.App. 1979) it was error to seat veniremen who knew and preferred the credibility of the victim of the crime [and principal prosecution witness] whom they knew above that of any defense witness. So also in *State v. Watson*, 595 S.W.2d 754 (Mo.App.1980), a venirewoman knew the victim and on that account doubted her ability to view the evidence with disinterest.

■ The disclosures of veniremen Kosloski and Roberts were not of a partiality toward police officer testimony as such or for that of any witness actually presented to the jury—but only the possibility of a hypothetical bias should a police officer acquaintance eventuate as a witness. The defendant suffered no prejudice from a concern which proved only suppositious. The refusal by the court to excuse veniremen Kosloski and Roberts for cause was not error.

The defendant Owens contends also that the direction that he stand to allow a witness to make identification was an abuse of discretion. In the course of the prosecution case, victim Carty noted that Owens had a different appearance in the courtroom than at the time of the robbery: his head hair was more closely shorn and his face hair was more fully grown than at the time of the crime. Carty was then asked to describe any distinctive feature about Owens at the time of the robbery. The witness recalled that Owens had "quite a few tatoos on him"—among them, a very small green dot or teardrop under an eye. The prosecution requested the court direct the defendant to stand to allow the approach of the witness to inspect his face for that feature. That procedure was permitted over the objection of the defendant that Owens was compelled thereby to self-incrimination. On appeal, the defendant contends that the procedure was not a constitutional error, but an abuse of judicial discretion.

■ The constitutional privilege protects against compelled testimonial communications and not against the enforced display of the person for observation and identification. *State v. Proctor*, 535 S.W.2d 141, 144[4] (Mo.App.1976). The procedure at the trial used to identify a witness, therefore, is

governed not by constitutional imperatives but by a prudent judicial discretion. *State v. Barron*, 465 S.W.2d 523, 526[3] (Mo.1971). The defendant contends that the tattoo identification by Carty was merely surfeit and unnecessary, since Owens had already been identified by Tallen, the other victim and by witness Carty himself. There was evidence the defendant came to the trial with an altered appearance. The corroboration by witness Carty of that idiosyncratic tattoo insignia under the eye was a valid confirmation that Owens was the same person whom the victim identified as the culprit at the early stage of the prosecution. There was no abuse of discretion.

The judgment is affirmed.

All concur.