STATE of Missouri, Respondent,

v.

James DRAPER, Appellant.

No. 65816.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1984.

Rehearing Denied Oct. 9, 1984.

Sean D. O'Brien, Asst. Public Defender, James W. Fletcher, Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

James Draper was convicted of first degree robbery, § 569.020, RSMo 1978, and sentenced to eighteen years in prison. The Western District Court of Appeals reversed his conviction and remanded the case for a new trial. A dissenting judge deemed the majority opinion to be in conflict with *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983), and *State v. Harrell*, 637 S.W.2d 752 (Mo. App.1982), and certified the cause to this Court pursuant to Mo. Const. art. V, § 10. We reverse the trial court's judgment and remand the cause for a new trial.

On August 17, 1982, at approximately 7:15 p.m., Manuel Gomez was robbed outside a grocery store as he was putting his groceries into his car. A man carrying a knife asked him for his billfold. Upon dis-

covering that the billfold contained no money, he searched the victim and asked for all the money in his pockets. After receiving only $3 and some change, he searched Gomez further, and on finding nothing, walked away.

Gomez saw the robber twice, glancing at him during the robbery and observing him walking into the store in the rear view mirror after the robbery. Daylight permitted him to see a black male with a beard wearing a tan cap, white T-shirt and jeans.

A few blocks away, Gomez flagged down a police officer, and gave him a description of his assailant and of the knife used in the robbery. The officer arrived on the scene in his patrol car, with Gomez following approximately five minutes after the attack.

According to Gomez, when the police car drove up, defendant was walking up the street from the grocery store; when he saw the police officer, he stooped down and started talking to some men. The police officer testified that when he first saw defendant, defendant was starting to walk northward from the store, that when he saw the police officer he started walking fast, and that when the officer pulled over to him he went to two or three men and began talking with them. The officer concluded, "He was trying to elude me."

Gomez identified defendant as the robber, and the officer arrested him. Upon searching him, the officer found a butcher knife with a chip on the handle identical to that described by Gomez, and $3 and some change.

Defendant testified that he did not commit the robbery. He claimed he found the knife on his way to the store, that before reaching the store he met some friends, and that he stopped to talk and drink with them. He explained his furtive movements by stating that he was partly drunk at the time, and that when he saw the police officer he panicked and attempted to get rid of the bottle before the officer walked over to him.

The only issue on appeal is whether the trial court erred in overruling defendant's challenge for cause of Venireman Carol Martin.

Early in the voir dire, the prosecutor asked the following general questions to which no one on the panel responded:

Now the Judge will instruct you, ladies and gentlemen, as to the credibility of witnesses and how you are to read and decide the credibility of any witness. Is there anyone who would be unable to follow that instruction merely because the witness may be a police officer? Is there anyone who would be likely to give less credibility to testimony because that person testifying is a police officer?

Later, Venireman Martin stated that a close personal friend was a police officer. The following exchange then took place between Martin and defense counsel:

MR. O'BRIEN: All right, and is there anything about your relationship with this gentleman, having known him, that would cause you to more than likely believe a police officer?

VENIREMAN MARTIN: I think it might.

MR. O'BRIEN: Would you have difficulty not believing a police officer or difficulty in your own mind arriving at a conclusion that a police officer might lie?

VENIREMAN MARTIN: I don't understand the—

MR. O'BRIEN: Well, let me ask you this. Could you in your own mind accept the fact that it's possible for a police officer to come in and say something that isn't true?

VENIREMAN MARTIN: I don't think so.

THE COURT: I didn't hear her response.

VENIREMAN MARTIN: I don't believe so.

Martin later stated in response to other individual questioning that she would be able to follow the court's instructions concerning defendant's right not to testify on his own behalf. Toward the end of voir dire, the panel was asked if anyone for any

reason thought he or she should not serve on the jury for any particular reason. No one responded.

Defendant challenged Martin for cause. The trial court denied the challenge, stating, *mistakenly,* that Martin later indicated she could be a fair and impartial juror. Defendant exercised one of his peremptory challenges to eliminate her, and Martin did not sit on the jury.

■ A defendant in a criminal case is entitled to a panel of qualified jurors before he is required to make his peremptory challenges. *State v. Lovell,* 506 S.W.2d 441, 443 (Mo. banc 1974); *State v. Land,* 478 S.W.2d 290, 292 (Mo.1972). When a venireman expresses a partiality toward police officer testimony per se—as a generic class—the bias of credibility contrary to the interest of the complainant-litigant disqualifies service as a juror. *State v. Williams,* 643 S.W.2d 832, 834 (Mo.App.1982); *State v. Owens,* 620 S.W.2d 448, 450 (Mo. App.1981). The trial court is accorded wide discretion in ruling on challenges for cause, but also has a duty to evaluate closely, and at times independently examine, the qualifications of potential jurors. *Lovell, supra* at 444; *State v. Ealy,* 624 S.W.2d 490, 493 (Mo.App.1981). Without such independent examination, a more searching review by the appellate court is justified. *State v. Butler,* 660 S.W.2d 225, 227 (Mo.App.1983); *Williams, supra,* at 834; *Ealy, supra,* at 493; *State v. Holliman,* 529 S.W.2d 932, 939 (Mo.App.1975). The trial court's determination, however, will be rejected only upon a clear showing of abuse of discretion. *State v. Olinghouse,* 605 S.W.2d 58, 69 (Mo. banc 1980).

■ No clear line can be drawn as to when a challenge for cause should or should not be sustained; each case must be judged on its particular facts. *Smith, supra,* at 422; *State v. Cuckovich,* 485 S.W.2d 16, 22–23 (Mo. banc 1972); *State v. Harris,* 425 S.W.2d 148, 155 (Mo.1968). Although errors in the exclusion of potential jurors should always be on the side of caution, *Butler, supra,* at 227; *State v. Carter,* 544 S.W.2d 334, 338 (Mo.App.1976);

reversal is required only if the defendant has been prejudiced. *Butler, supra,* at 227; *Harrell, supra,* at 757. The defendant has been held not to be prejudiced where the police officer did not provide any elements of the State's case. *Butler, supra,* at 227; *Harrell, supra,* at 757; where the more important evidence came from other witnesses, *Cuckovich, supra,* at 23; *State v. Daniels,* 629 S.W.2d 627, 630 (Mo. App.1982); and where the police officer did not testify to any truly contested issue. *Smith, supra,* at 424.

■ In this case, although Martin indicated she would accord police testimony greater weight than that of other witnesses, she was never individually questioned further by the court or counsel concerning that matter. No further questioning displayed an ability on her part to evaluate all testimony by the same standard. *See Harrell, supra,* at 756. The only other matter on which she was individually questioned was unrelated, concerning defendant's right not to testify on his own behalf. The trial court's own response to counsel's motion to strike Martin indicated that it had confused the two incidents, incorrectly attributing her assertion that she could follow the court's instructions as to defendant's right not to testify to the questioning concerning police testimony. Neither Martin nor any other member of the venire panel responded to general questions concerning their ability to follow the court's instructions concerning the credibility of witnesses, particularly police officers, or their ability to serve on the jury for any unspecified reason. However, such lack of response to general questions is not conclusive on the issue of bias, particularly as the juror's own conclusions in this regard are not dispositive. *Lovell, supra,* at 444, *Carter, supra,* at 337. Under the circumstances of this case, the court erred in failing to strike Martin for cause. In addition, the trial court's error was prejudicial in this case. Although the testimony of the victim alone established all the elements of the State's case, the testimony of the police officer as to defendant's behavior indicated

a consciousness of guilt of the robbery and contested the alibi of the defendant. Under such circumstances reversal is warranted.

Our holding is consistent with *Smith, supra,* and *Harrell, supra.* In *Smith,* unlike this case, the venireman was questioned at length by the trial judge, and stated he would treat policemen no differently than other witnesses in determining their credibility. 649 S.W.2d at 424. Moreover, there the police officers did not testify to any truly contested issue. *Id.* In *Harrell,* the entire voir dire did not indicate an improper preference toward police testimony, and police testimony was of only relatively minor importance. 637 S.W.2d at 757. Here there was no questioning by the court, the entire voir dire does not show Martin to be unbiased, and the police testimony was important in contradicting defendant's alibi.

The judgment is reversed and the cause is remanded for a new trial.

WELLIVER, HIGGINS, and BILLINGS, JJ., concur.

GUNN, J., dissents.

RENDLEN, C.J., dissents in separate opinion filed.

BLACKMAR, J., dissents in separate opinion filed and concurs in dissenting opinion of RENDLEN, C.J.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent.

The principal opinion misinterprets and fails to fully set forth pertinent portions of the voir dire and of the record made on defendant's motion to strike for cause and misreads defense counsel's motion to strike. In so doing the majority fails to consider certain exchanges between venirewoman Martin and defense counsel and erroneously concludes the trial court had confused the two separate times Martin was questioned individually.

In addition to the instances of individual questioning of Martin set forth in the principal opinion, the following occurred during defense counsel's voir dire of the panel following a question by Martin:

MR. O'BRIEN [DEFENSE COUNSEL]: [T]his goes on to some of my questions, and if you still have—after I'm finished still have that question, I'll see how I can best respond to it. The Court will instruct you that the burden of proof is on the State of Missouri to prove its case beyond a reasonable doubt. *Is there anybody here who could not follow that instruction?* All right, by placing the burden of proof on the State, that means that in this case it is up to the State of Missouri to prove Mr. Draper guilty, and he is under no obligation at any time to produce evidence to satisfy you that he is innocent. *Is there anybody who could not follow that instruction of law?* (Emphasis added.)

All right, Mr. Draper and any defendant has the option of allowing the State to put on its case and having the twelve persons who serve on the jury determine from that evidence whether or not the State has proved its case beyond a reasonable doubt. *Is there anybody here who would not be able to determine or think that you would have to believe the State's case, even were Mr. Draper to offer no evidence at all? Could you all independently weigh the State's case in your own mind is the question.* (Emphasis added.)

Miss Martin, have I answered your question sufficiently?

VENIREMAN MARTIN: Yes, thank you.

MR. O'BRIEN: Okay. Would you, knowing that you'll be instructed in those points of law, be inclined to expect Mr. Draper to testify before you could consider his guilt or innocence?

VENIREMAN MARTIN: Not after you explained it to me.

MR. O'BRIEN: *Okay, so you could follow the instructions of the Court in that regard?* (Emphasis added.)

VENIREMAN MARTIN: Yes.

The following colloquy occurred on defendant's motion to strike Martin for cause:

MR. O'BRIEN [DEFENSE COUNSEL]: Juror No. 7, Carol D. Martin, I would move to strike her for cause. She indicated that *she didn't believe that absent defense testimony or witnesses that she could independently evaluate the credibility of a police officer.* (Emphasis added.)

THE COURT: I don't think that's what she said.

MR. KOMOROSKI [PROSECUTOR]: I think she just had a question, Your Honor, as to—

THE COURT: And I think one of your last questions you asked her if she could render a fair and impartial verdict.

MR. O'BRIEN: Well, I think—

THE COURT: It started off that way, but after you talked with her, I think she said that she could be fair, and she could be a fair and impartial juror.

MR. O'BRIEN: Okay, Well, that may very well be what she said, Your Honor, but I think her initial response indicated that she would have difficulty making that evaluation.

MR. KOMOROSKI: I—

THE COURT: That's not what I got out of it.

MR. KOMOROSKI: I thought the question was asked and she responded after Mr. O'Brien's explanation she could be fair and impartial. She was satisfied with the—

THE COURT: She may have been a little confused at first, but I think after you talked with her I think she understood. I don't think she was—there was any question in her mind that she could be fair and impartial. All right, what about Juror Number 25, Mr. O'Brien?

Defendant's challenge for cause was not based *solely* on Martin's response to the individual questioning cited by the principal opinion. The record shows clearly that the challenge was based primarily on the later individual questioning of Martin regarding her ability to weigh the State's case in her own mind absent defense testimony. The principal opinion recognizes, as did the trial court and even defense counsel, that this inquiry resulted in her demonstrating she could follow the court's instructions and *independently* weigh the State's case in her own mind. Defense counsel sought to disqualify Martin by *combining* the two matters on which she was individually questioned, and as the trial court correctly concluded, Martin did not say she could not evaluate an officer's credibility absent defense evidence. The trial court accurately evaluated the challenge presented by defense counsel.

In reversing the conviction the principal opinion focuses on Martin's statements that she would be inclined to believe the testimony of a police officer. These statements were made in response to defense counsel's hypothetical question which was posed in general terms regarding the testimony of *any* police officer. This Court has held that such statements will not operate to disqualify when consideration of the entire voir dire shows that the venirewoman would be fair and impartial if chosen as a juror. *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983).

There is ample support in this record for the trial court's finding that Martin could be a fair and impartial juror. Defense counsel inquired whether any venireman could not follow the burden of proof instruction and require the State to prove its case beyond a reasonable doubt. Martin did not respond. Defense counsel posed this additional question to the array:

Is there anybody here who would not be able to determine or think that you would have to believe the State's case, even were Mr. Draper to offer no evidence at all? Could you all independently weigh the State's case in your own mind is the question.

Again, Martin remained mute and by so doing affirmed that she could independently evaluate the State's case even if the defendant offered no evidence. Defense counsel continued with a direct question to venirewoman Martin: "Okay, so you could follow the instructions of the court in that

regard?" She replied, "Yes." Finally, defense counsel made these closing remarks in his address to the panel, and again, Martin did not indicate that she had any reservations about her qualifications to serve on the jury:

Okay, thank you. Anybody else have any response to the last question or to what Miss Martin and I were talking about? Okay. Now, that we have to cover every single thing that might be in anybody's mind, *so the question I have now is, is there anybody who for any reason thinks that he or she should or should not serve on this jury for any particular reason?*

All right, and it's impossible for me in my questions to anticipate everything that might possibly affect you when you reach your decisions. *Is there anybody here who feels that there's something that Mr. Komoroski* [PROSECUTOR] *and I should know about before we select the twelve of you who will serve as jurors that you haven't already been asked?* (Emphasis added.)

A determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of the venireman's demeanor and an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972). A significant amount of time elapsed between Martin's initial statement regarding police testimony and her affirmation of her ability to follow the court's instructions. She heard and by her silence affirmed her qualifications in response to defense counsel's final remarks to the panel. Giving due regard to the trial court's opportunity to view the witness and hear her testimony, it is reasonable to conclude the trial court found that the second individual questioning and final general questions had cured any doubts raised in the first episode and that defendant's challenge *inaccurately* interpreted Martin's responses.

Viewed in the light most favorable to the trial court's finding, the testimony as a whole indicated that Martin demonstrated an ability to evaluate all testimony by the same standard. There is no clear abuse of discretion shown on this record nor any real probability of injury to defendant. Even if defendant's challenge had been based exclusively on the initial questioning, it is not clear Martin would need to have been disqualified for cause. The essential elements of the State's case were proved by the testimony of the victim. Police testimony was of relatively minor importance. *See State v. Smith*, 649 S.W.2d 417, 423–24 (Mo. banc 1983).

The judgment should be affirmed.

BLACKMAR, Judge, dissenting.

Chief Justice Rendlen's transcript quotations persuade me, contrary to my initial impression, that the trial court did not err in overruling the challenge for cause to the juror. I must, however, express my impatience at the practice of judges, especially those in urban areas, in overruling challenges for cause when the juror may have expressed tentative thoughts which give occasion for concern.