STATE of Missouri,
Plaintiff-Respondent,

v.

Bryant JONES, Defendant-Appellant.

No. 48652.

Missouri Court of Appeals,
Eastern District,
Division One.

May 7, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 1985.

Daniel V. O'Brien, St. Louis, for defendant-appellant.

William L. Webster, Leah A. Murray, Jefferson City, for plaintiff-respondent.

Debra Buie Arnold, Asst. Public Defender, St. Louis, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant was convicted of burglary second degree, § 569.170 RSMo 1978. Since defendant was charged as a persistent offender under § 558.016 RSMo 1978 the court determined punishment. Defendant had previously been convicted on guilty pleas of two burglaries, a stealing and an assault, all felonies. The sentence was ten years.

Defendant claims error in the trial court's refusal to remove venire person Carroll for cause. Although she is the wife of a police officer, defendant does not rely on that fact. He relies only on the following inquiry and the trial court's failure to inquire. Defendant maintains that she expressed doubt and was not qualified as an impartial juror.

Having asked the jury panel if any one knew any police officers, the prosecutor then asked juror Carroll:

[PROSECUTOR]: Who do you know?

JUROR CARROLL: My husband is a police officer.

[PROSECUTOR]: Um, now we get down to the—tell me that's a real hard job. Can you treat a police officer and his testimony on the same basis that you would treat anyone else's?

JUROR CARROLL: *I don't really know if I could.*

[PROSECUTOR]: All right. We need a little bit of a commitment. We need to know whether you would treat a police officer's testimony with the same degree of detachment, same skepticism, and the same basis as you would treat any other witness that would come in?

In other words, would you be any more or less inclined to believe a police officer because he was a police officer?

JUROR CARROLL: No.

[PROSECUTOR]: Okay. Double negative. What we're asking is would you judge a police officer's testimony the same as you would judge anyone else's?

JUROR CARROLL: *Probably,* yes.

[PROSECUTOR]: Okay. We need something. We need a yes or no. Um, in other words, obviously you're married to a police officer. Many of his friends are police officers. You socialize with them, I assume, but the question is would the fact that there are two police officers, who may or may not know your husband, the fact that two police officers are coming into testify, would that affect your ability to be fair and judge these two police officers, who are testifying here today, any different if they were two people from Centerre Bank and Trust?

JUROR CARROLL: No.

.     .     .     .     .

[PROSECUTOR]: I realize this is a tedious process. And I'll try to finish up as soon as I possibly can.

The state is going to call three or four witnesses. The police officers are Detective Franklin, Detective Charles Douglas and perhaps a police officer George Rattermann. Anyone think they know any one of those individuals?

.     .     .     .     .

JUROR CARROLL: I believe I've met Rattermann if it's the same Rattermann.

[PROSECUTOR]: Pardon me?

JUROR CARROLL: If it's the same Rattermann, his wife belongs to the Police Wife's Association.

[PROSECUTOR]: It's a George Rattermann.

JUROR CARROLL: It sounds familiar, yeah.

[PROSECUTOR]: Do you know whether you've met him personally or not?

JUROR CARROLL: I could have at, you know, the Police Wife's Luncheon or the ball or something.

[PROSECUTOR]: If, in fact, it is someone that you have met before, could you be fair and impartial with regard to his testimony?

JUROR CARROLL: Yes.

[PROSECUTOR]: Any other detectives that I mentioned?

JUROR CARROLL: Don't recall their names. (emphasis added)

Defendant's counsel did not question venire person Carroll nor did the court. Defense counsel told the court, "[r]egard Juror 701, Elaine Carroll, she's the wife of a police officer. I think she's stated—she first stated she didn't know if she could be fair. She knows—she thinks she knows Police Officer Rattermann or at least his wife. I request she be struck for cause." The prosecutor opposed the motion on the ground that "she could judge their testimony as she would a—judge anyone else's." The court ruled as follows: "Her answers are somewhat confusing but based on the last response, which I understood that she could be fair and even if she knew Rattermann's wife, wouldn't affect her decision. Therefore I'll overrule your motion." The court later acknowledged that defense counsel had made his record on this issue and the issue was preserved in defendant's motion for new trial.

■ After the present case was tried our supreme court, in a divided opinion, reversed and remanded for new trial on a similar issue. *State v. Draper*, 675 S.W.2d 863 (Mo. banc 1984). Judge Blackmar dissented but noted, "I must, however, express my impatience at the practice of judges, especially those in urban areas, in overruling challenges for cause when the juror may have expressed tentative thoughts which give occasion for concern." 675 S.W.2d at 868. This court concurs with Judge Blackmar's sentiment. We find that defendant was denied the right to a full panel of qualified veniremen.

In this case the state's proof consisted of the testimony of two police officers. On October 19, 1983 the officers were assigned to the Vice Narcotics Division for the St. Louis Police Department. They were in civilian clothes and were conducting an early morning surveillance of a package liquor store. Detective Franklin was in an unmarked police car on the north side of Lillian immediately across the street from the liquor store. From that location he observed a man enter J & M Cleaners which was located west of the liquor store and to the left front of the police car. He saw an individual open a window screen and enter the cleaners through a window facing Lillian. He notified his partner, Detective Douglas, of the problem. As he approached the cleaners he saw sixteen pairs of jeans being thrown out the window. Detective Franklin placed the individual under arrest as he was climbing out the window. Detective Douglas saw the jeans coming out the window and observed the arrest. Both men noted that defendant had his hands covered with white socks. In addition to this evidence the state offered the testimony of the property manager to confirm that the building was locked and that defendant had no permission to enter. Police Officer George Rattermann was the state's only other witness. As an evidence technician he processed the scene i.e. took photographs and testified that he found no fingerprints.

The only evidence offered by defendant was the testimony of his friend, Jessie Pendleton. On the evening of October 18 and the early morning of October 19 defendant and others were visiting Mr. Pendleton at a house just west of the scene and in the neighborhood. Minutes after defendant left Mr. Pendleton became aware of a "lot of lights" flashing—police car lights. This testimony did not establish an alibi.

In *State v. Draper*, 675 S.W.2d 863 (Mo. banc 1984) the court reversed and remanded for new trial because a venire person expressed doubt about treating the testimony of police officers the same as other witnesses. In that case venireman Martin was a close personal friend of a police officer. She thought her relationship with the officer might cause her to be more likely to believe a police officer. The entire panel was asked whether there might be any reason that they not serve on the jury. Silence prevailed. The trial court made no inquiry. The supreme court noted that the trial court mistakenly remembered that

Martin had indicated that she could be a fair and impartial juror. The court concluded that the defendant was prejudiced because the police officer's testimony "... indicated a consciousness of guilt of the robbery and contested the alibi of the defendant." 675 S.W.2d at 865–866.

The *Draper* opinion summarizes the law in this area.

A defendant in a criminal case is entitled to a panel of qualified jurors before he is required to make his peremptory challenges. *State v. Lovell*, 506 S.W.2d 441, 443 (Mo. banc 1974); *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972). When a venireman expresses a partiality toward police officer testimony per se—as a generic class—the basis of credibility contrary to the interest of the complainant-litigant disqualifies service as a juror. *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App.1982); *State v. Owens*, 620 S.W.2d 448, 450 (Mo.App.1981). The trial court is accorded wide discretion in ruling on challenges for cause, but also has a duty to evaluate closely, and at times independently examine, the qualifications of potential jurors. *Lovell, supra* at 444; *State v. Ealy*, 624 S.W.2d 490, 493 (Mo. App.1981). Without such independent examination, a more searching review by the appellate court is justified. *State v. Butler*, 660 S.W.2d 225, 227 (Mo.App. 1983); *Williams, supra*, at 834; *Ealy, supra*, at 493; *State v. Holliman*, 529 S.W.2d 932, 939 (Mo.App.1975). The trial court's determination, however, will be rejected only upon a clear showing of abuse of discretion. *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo. banc 1980).

No clear line can be drawn as to when a challenge for cause should or should not be sustained; each case must be judged on its particular facts. *Smith, supra*, at 422; *State v. Cuckovich*, 485 S.W.2d 16, 22–23 (Mo. banc 1972); *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968). Although errors in the exclusion of potential jurors should always be on the side of caution, *Butler, supra*, at 227; *State v. Carter*, 544 S.W.2d 334, 338 (Mo.App.1976); reversal is required only

if the defendant has been prejudiced. *Butler, supra,* at 227; *Harrell, supra,* at 757. The defendant has been held not to be prejudiced where the police officer did not provide any elements of the State's case, *Butler, supra,* at 227; *Harrell, supra,* at 757; where the more important evidence came from other witnesses, *Cuckovich, supra,* at 23; *State v. Daniels*, 629 S.W.2d 627, 630 (Mo.App. 1982); and where the police officer did not testify to any truly contested issue. *Smith, supra,* at 424.

■■■ A defendant is entitled to a panel of jurors who are able to question the veracity of all witnesses and provide defendant with a fair and impartial trial. *State v. Lovell*, 506 S.W.2d 441, 444 (Mo. banc 1974). When the major witnesses against a defendant are individuals the venire person is biased toward the venire person should be eliminated for cause. *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App.1982). This is especially true in a case where almost all of the state's evidence comes from police officers.

Venire person Carroll's answers during voir dire indicated doubt in the area of partiality toward the testimony of police officers. This partiality should have disqualified her from service as a juror because she had a "bias of credibility contrary to the interest of the defendant." *State v. Willis*, 688 S.W.2d 38 at 41 (Mo. App.E.D.1985). Although the defendant does not rely upon the status of wife of a police officer in the claim of equivocation and disqualification it would seem a clear warning of danger especially where she candidly stated she did not really know if she could treat a police officer's testimony on the same basis as a non-police officer. *See State v. Holliman*, 529 S.W.2d 932 (Mo.App.1975). The defendant should not have been forced to use a preemptory challenge against a juror who should have been discharged when challenged for cause. The strength or weakness of the state's case was not known when the error occurred. Although the jury was not required to weigh the testimony of police

officers against that of non-police officers, the credibility of the state's witnesses who were police officers remained with the jury. We cannot speculate that the result would have been the same if defendant had not been required to remove venire person Carroll by use of one of his preemptory challenges.

We reverse and remand for new trial.

PUDLOWSKI, P.J., concurs.

GAERTNER, J., dissents with separate opinion.

CARL R. GAERTNER, Judge, dissenting.

I respectfully dissent. Reversal on the sole ground of failure to discharge a venirewoman is, under the circumstances of this case, in derogation of the longstanding rule that the trial court's determination of the qualifications of a prospective juror will be rejected only upon a clear showing of abuse of discretion. *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo.banc 1980).

I do not read *State v. Draper*, 675 S.W.2d 863 (Mo.banc 1984) as requiring a reversal in this case. In *Draper* a sharply divided Supreme Court reversed a conviction because of the denial of a challenge for cause of a prospective juror who had twice given a negative response to a question regarding her ability to accept the possibility that a police officer might give untrue testimony. No follow-up questions were addressed to the venirewoman by the court or by counsel. The record was left with an undiluted expression of doubt about her ability to accept even a possibility that a police officer might testify to something that wasn't true. The majority opinion emphasized that the trial court had *mistakenly* thought her later responses to general questions indicated an ability to be a fair and impartial juror.

Here, the interrogation of juror Carroll shows her expressing doubt about her consideration of police testimony when first questioned. Her responses to the next series of questions, however, completely dispel this doubt. Because of these subsequent answers, I cannot agree with the majority

that her answers showed "a bias of credibility contrary to the interest of the defendant."

Moreover, the trial judge has the advantage of observing the demeanor of the venireman, of hearing the tonal accentuation of his responses, of watching the movement of his head and eyes and hands, the "body language" which so often lends interpretation and emphasis to the spoken word. This advantage over the reading of a printed transcript gives rise to the requirement of appellate deference to the trial court's exercise of discretion in evaluating the effect of responses to voir dire examination. These sensory perceptions, which are not apparent on a cold record, are of particular import when considered in the light of the psychological pressures upon a prospective juror. He is summoned into unfamiliar surroundings amid unfamiliar faces, herded into the formality of a courtroom and placed under oath. He is told that he is faced with the awesome task of passing judgment on his fellow man and deciding whether another person is to be deprived of his liberty. He is asked about any preconceived notions about subjects he may never have considered, about how he might possibly react to what he might possibly hear, to commit himself to disregard his own thoughts about the law in favor of following unknown instructions and to describe before strangers personal experiences of himself and his family. That a venireman's first response is to express doubt and confusion is not surprising. That such doubt and confusion has been resolved in response to clarifying questions is best determined by the trial judge who sees and hears and evaluates the totality of the circumstances.

For the same reasons, the trial judge is better situated to determine the import to be attributed to such expressions as "I think—," "I guess—," "maybe—," and, as in the instant case, "probably—." It is essential that such phrases be viewed in the total context of the venireman's responses in the light of the reluctance of the average citizen in awesome surroundings

to express his feelings and opinions in absolute terms.

The chronology of the questions and answers of juror Carroll are set forth in the majority opinion. Her first answer conceivably can be interpreted as expressing doubt. More likely it was a spontaneous response to a question that had never entered her mind. When directly asked about her approach to the credibility of police officer as a police officer, there was no doubt about her feelings. The same absence of doubt is reflected in her response to the question regarding her ability to judge police testimony no differently than that of bank employees. Her intervening response, "probably, yes," does not, in my judgment, deserve the emphasis placed upon it by the majority. Recognizing the timorousness of the average venireman, I view such a response as nothing more than the nervous reluctance of a sincere person to use absolutes regarding her reaction to unknown future situations. Especially in light of her subsequent unequivocal answer, placing emphasis on the single word "probably" is unwarranted.

I recognize the importance of clarifying questions by the trial judge when a venireman's answers indicate doubt or indecision. But here, where counsel elicited unequivocal answers by "follow-up" questions, what more could the court ask? It is significant that defense counsel saw no need to ask any specific questions of juror Carroll.

Appellant does not assert any other ground for reversal. The evidence of guilt is overwhelming. I would affirm.