STATE of Missouri,
Plaintiff-Respondent,

v.

Carl AYERS, Defendant-Appellant.

No. 51280.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 9, 1986.

Motion for Rehearing and/or Transfer
Denied Jan. 27, 1987.

Application to Transfer Denied
March 17, 1987.

Michael D. Burton, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted by a jury of first degree murder, § 565.020.1, RSMo. Cum.Supp.1986, and sentenced to life imprisonment without probation or parole. He appeals; we affirm.

Defendant does not challenge the sufficiency of the evidence; however, a recitation of the pertinent facts is necessary for an understanding of defendant's points on appeal.

The victim, Glenn Farrell, was an elderly man who lived on Menard Street in St. Louis. On Monday, November 19, 1984, James Teague, a neighbor of the victim, went to his house to check on him because he had not been in church the previous day. Teague found the victim lying in a puddle of blood on the kitchen floor and called police. Teague had last seen the victim on Friday when, from a distance, he saw him looking at some tools with two men. Teague thought one of the men was the defendant, a man he had known "for a long time."

The medical examiner determined that Farrell had died from "cranial cerebral trauma" caused by eleven chop lacerations of his scalp and several fractures on both sides of his skull.

Several witnesses testified that defendant admitted hitting the victim and stealing his money. William Borden, a friend of defendant, testified that a few days before Thanksgiving 1984, defendant had talked to him about "taking some money off of a fellow over on Menard." Defendant described the man to Borden as a "pretty old fellow" and told him he had worked for the man and that he usually carried about three or four thousand dollars. Defendant drove Borden by the man's house on Menard. Borden said he told the defendant he did not want to take part in a robbery because he was on parole. Subsequently, defendant told Borden he had hit the victim with a pipe and had taken money and guns from him. He asked Borden if he knew where he could sell some guns.

Charles Roberts became acquainted with defendant while both were in the city jail in March 1985. In the presence of several others, defendant told Roberts he had murdered a man. He said he had borrowed his girlfriend's father's car to go "rob a house" and while he was in the house the occupant returned. Because the man knew him, defendant said he "chopped him in the head with a hatchet." He told Roberts he got two shotguns, a .38 revolver, and five hundred dollars cash from the house.

Earl Hochstatter had known defendant since defendant was "seven or eight years old." Hochstatter said defendant told him

he was "going to do a burglary, was going to get a gun and some money...." Hochstatter said Dale Melton, Michelle Melton, and another man were present during the conversation. Defendant asked if he could borrow Dale Melton's car "to go do a burglary" and Melton let him have it. When defendant returned he had some money and what looked like a blue .357 magnum. Two neighbors testified that among the victim's weapons was a .357 magnum.

Danny Lawson testified he had known defendant for about six years. He said he was in the workhouse with defendant in January 1985, and defendant told him he had gone to a house in the Soulard neighborhood "to do a burglary and the guy was there and he hit him with a hatchet." Defendant told Lawson he got some guns, including a .357 magnum, and money from the house.

Michelle Melton, defendant's girlfriend at the time of the murder, and her father, Dale Melton, were called by the state as witnesses. Michelle Melton testified that about a week before Thanksgiving in 1984 she saw defendant with a .357 magnum. She also said that one night about a week after Thanksgiving while they were in bed defendant started laughing. Asked why he was laughing, she said, "He just told me that he had a lot of things on his mind and he thought it was funny." She then said she could not remember what else he said or what he thought was funny. Asked if she remembered being interviewed by detectives Bender and Rousan, she said she did, but she did not remember their taking a statement from her. The prosecutor then questioned her about her statements to officers concerning what the defendant had told her. She responded that she did not remember making some of the statements and she denied altogether the other statements.

Dale Melton said he could not remember if he had a conversation with defendant in November 1984 about "doing something in a house over on Menard." He later denied having a conversation with defendant "concerning an old man on Menard." He said

he could not remember, and later denied, seeing defendant in possession of a weapon in November 1984. He did remember talking to two police officers in March 1985 about defendant, but he could not remember telling them about a conversation he had had with defendant. He denied that the defendant had given him money to borrow his car.

The court permitted police officer George Bender to testify that Michelle Melton had told him that approximately one and one-half weeks after Thanksgiving 1984 she and defendant were in bed and defendant began laughing so hard it brought tears to his eyes. She asked defendant why he was laughing and he told her about hitting "an old man in the head with a tire tool" causing his death. Bender also testified that Michelle Melton had told him that defendant had told her he had taken weapons, including a .357 magnum, and money from the victim's house. Barbara Mize, a grand jury court reporter, testified about Michelle Melton's testimony before the grand jury. Mize apparently read directly from her notes and the transcript of the grand jury proceedings. Michelle Melton's grand jury testimony about what defendant told her was substantially the same as her statement to Bender.

Officer Bender testified that Dale Melton had told him that defendant told Melton about his plan to steal money from the victim and that he had hit the victim and thought he had killed him. Mize testified that Dale Melton told the grand jury that defendant asked to borrow his car so he could sell some guns and that he lent it to him for $50.

■ Defendant's principal point on appeal is that the trial court erred in permitting the impeaching testimony of Bender and Mize because neither of the Meltons testified at trial to facts contrary to the prior statements and, thus, the statements were not inconsistent.

Before a witness may be impeached by his statements made prior to trial, the court first must determine whether the prior statements are inconsistent with the witness's trial testimony. Absent a showing of inconsistency, use of the prior statements is questionable. *State v. Ivicsics*, 604 S.W.2d 773, 780 (Mo.App.1980). Once the inconsistency is shown, the witness may be impeached by the statement. To impeach the witness with his own statement, a foundation first must be laid by asking him, among other questions, whether he made the prior statement and obtaining either a denial that he made the statement or an answer that he does not remember making the statement. *Ivicsics*, 604 S.W.2d at 780.

As a general rule, when a witness has no recollection of the fact about which he is examined, his prior statement cannot be used to impeach him because there is no inconsistency. *People v. Sam*, 71 Cal.2d 194, 454 P.2d 700, 709, 77 Cal.Rptr. 804, 813 (1969) (en banc); *Commonwealth v. Knudsen*, 443 Pa. 412, 278 A.2d 881, 883 (1971), *cert. denied* 409 U.S. 866, 93 S.Ct. 163, 34 L.Ed.2d 115 (1972). *See also* 3A Wigmore, Evidence § 1043 (Chadbourn Rev.1970).

In *People v. Sam*, a case in which the California Supreme Court reversed the defendant's manslaughter conviction, the prosecution had introduced evidence of defendant's prior acts to show *modus operandi*. A long-time friend of defendant was asked about an alleged fight in which defendant had kicked him. The witness testified that, due to intoxication, he did not remember the incident or his signing a police report about it. The police officer who investigated the fight was allowed to testify that he interviewed the witness, that the witness had been drinking but did not appear drunk, and that the witness had signed a police report which indicated defendant had kicked the witness. The court, pointing out that the witness's lack of present recollection at trial of the incident or the police report constituted his *entire* testimony, held that the prior statement was improperly admitted because there was no inconsistency between the prior statement and his testimony at trial.

The record before us now is more like that in *People v. Green*, 3 Cal.3d 981, 479 P.2d 998, 92 Cal.Rptr. 494 (en banc), *cert.*

*dismissed,* 404 U.S. 801, 92 S.Ct. 20, 30 L.Ed.2d 34 (1971) in which a unanimous California Supreme Court affirmed defendant's conviction for furnishing marijuana to a minor. The chief witness for the state was the minor, Melvin Porter. At trial, Porter testified he had known defendant for about four and one-half years and that defendant had called him and an agreement was made that Porter would sell marijuana for defendant. Quoting from the opinion, "At this point in the proceedings, however, Porter's testimony suddenly became curiously vague ... Asked if defendant brought anything to the house, Porter replied 'Not that I recall.'" 479 P.2d at 1001, 92 Cal.Rptr. at 497. The state then cross-examined Porter about statements he had made at a preliminary hearing and to a police officer concerning the actual transfer of the marijuana. Both prior statements were admitted into evidence.

Defendant Green argued that the court erred in admitting Porter's prior statements because they were not inconsistent with Porter's trial testimony.

Justice Mosk, who had authored the *People v. Sam* opinion, writing for the *Green* court said:

In normal circumstances, the testimony of a witness that he does not remember an event is not "inconsistent" with a prior statement by him describing that event. [citing *People v. Sam* ]. But justice will not be promoted by a ritualistic invocation of this rule of evidence. *Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness's prior statement [citation omitted], and the same principle governs the case of the forgetful witness.* In contrast to *Sam,* in which the witness had no recollection whatever of the prior incident, here Porter admittedly remembered the events both leading up to and following the crucial moment when the marijuana came into his possession, and as to that mo-

ment his testimony was equivocal [footnote omitted]. For the reason stated above, we conclude that *Porter's deliberate evasion of the latter point in his trial testimony must be deemed to constitute an implied denial* that defendant did in fact furnish him with the marijuana as charged. His testimony was thus materially inconsistent with his preliminary hearing testimony and his extrajudicial declaration to [the police officer] (emphasis added)....

479 P.2d at 1002, 92 Cal.Rptr. at 498.[1]

Here, Michelle Melton described the events and the statements of defendant immediately prior to his explanation of why he was laughing. We conclude that her inability at trial to remember defendant's explanation was a deliberate evasion which constituted an implied denial that defendant told her about killing the victim. Her testimony, therefore, was materially inconsistent with her statements to the police officer and before the grand jury. The prior statements were properly admitted.

In his testimony, Dale Melton denied having had a conversation with defendant about "an old man on Menard," he denied having seen defendant with a gun, and he denied allowing defendant to use his automobile in exchange for $50. These denials were inconsistent with his prior statement to officer Bender; the denial about defendant's use of his car also was inconsistent with his grand jury testimony. From a reading of the transcript, we conclude that his testimony as a whole also constituted an implied denial that defendant told him about the robbery and beating. Because of his absolute denial of certain matters and implied denial of others, the court did not err in admitting Dale Melton's prior statement.

■ Defendant also alleges the trial court erred by permitting the prior statements of Michelle and Dale Melton to be used as substantive evidence. This allega-

---

1. We find no Missouri appellate court opinion which has directly faced the issue of whether a denial of recollection can be, under certain circumstances, inconsistent with a prior statement thereby making the prior statement admissible. Apparently this issue has seldom reached the appellate level. For a discussion of decisions from other jurisdictions which have considered the issue, *see* Annot., 99 A.L.R.3d 934 (1980).

tion is without merit in light of § 491.074, RSMo Cum.Supp.1986, which provides:

> Notwithstanding any other provision of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under Chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

This statute was noted with approval by the Missouri Supreme Court in *Rowe v. Farmers Insurance Co.*, 699 S.W.2d 423, 428 (Mo. banc 1985).

Any error, had there been error, in the admissibility of the testimony of Bender and Mize concerning the prior statements of Michelle and Dale Melton was harmless because their testimony was cumulative to the evidence provided by other witnesses. *See State v. Nimrod*, 484 S.W.2d 475, 479 (Mo.1972).

■ Defendant also contends that the trial court erred in overruling defendant's motion to strike for cause venireman Mitchell. Initially, when asked by defense counsel if he would give more weight to a police officer's testimony than to that of someone else, he responded, "I believe in being fair." He responded in this manner to a similar question, and when defense counsel persisted, he said he believed he would give more weight to the officer's testimony "on account of his title, his job...." To the next question he answered he would be fair to all witnesses but then said he would give more weight to a police officer's testimony.

In later questioning by the assistant circuit attorney, following an explanation that a police officer's testimony must be treated the same as that of other witnesses, Mitchell said "Yeah, treat them the same way, yeah." He then said he would not automatically believe a witness simply because he was a police officer, and he said he would be able to weigh what a police officer said against what other witnesses said. The trial court, in overruling defendant's objection to Mitchell, said she believed he had been rehabilitated.

A defendant in a criminal case is entitled to a full panel of qualified veniremen before he is required to make his peremptory challenges. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983). Although the trial court has discretion in ruling on a challenge for cause, it has a duty to evaluate closely, and at times independently examine, the qualifications of potential jurors. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). Where, however, counsel have been exhaustive in their explanation of the law and questioning of the venireman, it is redundant for the trial court to intervene.

When a venireman expresses a partiality toward the credibility of police officer testimony as a class, his bias disqualifies him as a juror. *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App.1982). But, qualifications of a prospective juror are not to be determined conclusively by his initial or isolated responses; they are to be determined upon the basis of the entire voir dire examination. *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982).

Here venireman Mitchell initially stated that when he weighed the testimony of a policeman he would be "fair." He then stated he would give more weight to the officer's testimony because of his position; however, upon further questioning, he said he would treat police officer testimony the same as that of a non-police officer witness, and he said he would not automatically believe a witness solely because he was a police officer. We find no abuse of discretion in the trial court's refusal to strike venireman Mitchell for cause.

■ We note, moreover, that error in refusing to excuse a potential juror does not always require a reversal; there must be prejudice. *Draper*, 675 S.W.2d at 865. Missouri courts have held there was no prejudice to the defendant in situations such as where the police officer's testimony did not provide any of the elements of the state's case, where the more important evidence came from other witnesses, and where the police officer did not testify to any truly contested issue. *Draper*, 675 S.W.2d at 865 (citations omitted).

Only two employees of the police department testified before the jury. An evidence technician testified principally about photographs taken at the scene, and officer Bender testified about the statements to him by Michelle and Dale Melton about what defendant had told them. We see no prejudice to defendant from the failure to excuse venireman Mitchell because officer Bender's was not the only testimony on the subject. There was similar testimony from the grand jury court reporter and the four witnesses who testified about the defendant's admissions.

This is not a case like *State v. Spidle*, 413 S.W.2d 509, 513 (Mo.1967), which largely involved a police officer's word against the word of the defendant about whether defendant's action was an assault or self-defense or like *Draper* where the testimony of a police officer about defendant's behavior indicated a consciousness of guilt of the robbery on the part of the defendant and also contested the defendant's alibi. 675 S.W.2d at 865–66.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.