STATE of Missouri, Respondent,

v.

Carl MOREHOUSE, Appellant.

No. WD 43466.

Missouri Court of Appeals,
Western District.

June 4, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

PER CURIAM:

Defendant appeals from conviction, after a jury trial, for driving while intoxicated—third offense. § 577.010, RSMo 1986. The trial court sentenced defendant to three years imprisonment as a repeat alcohol offender. § 577.023.12, RSMo 1986. On appeal, defendant claims the trial court erred in overruling defendant's challenge for cause of a venireman when that venireman had indicated on a jury questionnaire that he knew a police officer, which would "cause [him] not to be fair and impartial."

The judgment is affirmed.

The sufficiency of the evidence is not challenged, but a statement of the facts is helpful. Highway Patrolman Joel Curless

testified that he was in his office on March 18, 1989, when he received a call that Carl Morehouse was driving around Hopkins, Missouri, and that he was intoxicated. Trooper Curless went to Hopkins, and saw a blue Plymouth, which matched the description of Morehouse's car, parked in a filling station parking lot. The trooper parked his car across the highway and set up surveillance.

About ten minutes later, defendant walked out of the service station, and stumbled toward his car. Defendant got into the car, and drove roughly one and one-half blocks to his home. Trooper Curless testified that defendant crossed the center line of the highway, making a wide right turn into his driveway. The trooper followed defendant into the driveway.

Trooper Curless approached defendant as he got out of his car, and testified that defendant was unsteady, and both he and his car smelled of intoxicants. When the trooper asked defendant to say the alphabet, defendant slurred his letters, and toward the end said several letters out of order. Then defendant was asked to perform a "heel-to-toe" test. He refused, saying that he was too tired. Trooper Curless arrested defendant Carl Morehouse for driving while intoxicated.

Defendant was interviewed further at the Nodaway County Sheriff's Department. He was informed of the implied consent law, § 577.041, RSMo Supp.1987, and refused to take a breathalyzer test. Highway Patrolman Ed Ensminger was called solely to testify that he was trained and prepared to administer a breath test, and defendant refused. Trooper Curless testified that he read defendant the Miranda warnings, and at that time defendant admitted having one beer.

In defense, defendant's mother and son testified that the driveway has a sharp dogleg in it, and one must make a wide right turn in order to avoid a large ditch. The son also testified that after a long day's work his father is often unsteady and slurs his speech.

The matter was set for jury trial on January 25, 1990. Sometime before that a questionnaire was sent to prospective jurors pursuant to § 494.415, RSMo Supp. 1989. Venireman Law was one of those prospective jurors. Question 13 on the juror qualification form asked, "Are you either a close friend of or related to any law enforcement officer?" Venireman Law answered, "Yes." The next question said, "If the answer to 13 is yes, would that relationship cause you not to be fair and impartial in a criminal case?" Again, Venireman Law answered, "Yes." Venireman Law signed at the bottom of the "Questionnaire for Jury Service," following the words, "I certify that the foregoing statements are true to the best of my knowledge." The questionnaire was dated December 28, 1989.

Venireman Law was on the venire panel at defendant's trial. Before the parties began voir dire, the trial court asked, "Is there any member of the jury panel that for any reason does not feel they can serve on a jury to be selected from this panel?" Venireman Law did not respond. Later, during the prosecutor's questioning, Venireman Law indicated that he knew Trooper Ensminger. The prosecutor then spoke to those venirepersons who indicated that they knew one of the officers that would testify:

> My question to you is, is there anything about that background or history which would affect your ability to hear their evidence, hear their testimony and judge it just as you would judge anyone else? In other words, is there something because of your relationship, because you are neighbors, whatever it may be that would make it so that you would tend to give their testimony more weight or less weight because of that history? And I don't necessarily want to know which way, I just want to know is there anything in that background that would say to you I would trust him more or trust him less because of that, anyone for him that is true?

There was no response by any member of the venire. The prosecutor then stated, "I see no hands, so I assume a negative response to everyone who had raised their

hand [indicating they knew one of the troopers]."

Subsequently, the court raised the question again. The court asked:

Could we follow a question that the prosecutor asked about being related to or knowing someone involved in law enforcement. Let me start with those related to. Would that relationship in any way cause you to be impartial [sic] that you could not be fair in judging the evidence presented in this courtroom? Would you have a bias in favor of the law enforcement? ...

Let me ask the same question with those of you who know a police officer or anyone in law enforcement. Would that in any way affect your impartiality in the evidence, in basing the decision purely on the evidence?

The record indicates that there was no response.

Defense counsel presented a final question to the venire:

Now that you've had a chance to reflect upon all the questions posed by the court, the prosecuting attorney and by myself, is there anything at all that comes to mind of anybody on the jury panel that they feel may make it difficult for you to sit in a fair and impartial manner and make a decision based purely on the evidence?

Venireman Law did not respond.

Defense counsel attempted to strike Venireman Law for cause based on his answers in the questionnaire. The trial court denied the strike: "Well, maybe he's changed his mind. It could be that he didn't understand that question [on the questionnaire] or changed his mind. It certainly was asked specifically [today]." Defense counsel did not himself specifically question Venireman Law about whether his acquaintance with Trooper Ensminger would affect his ability to serve fairly and impartially or confront him with his questionnaire answers, nor conduct such inquiry.

■ For his sole point on appeal, defendant contends that the trial court abused its discretion by refusing to strike Venire-

man Law for cause because his answer on the jury questionnaire indicated he was unable to be impartial. *See State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). Defendant argues that because Venireman Law did not respond similarly to questions during voir dire, and did not state unequivocally that he could not be impartial to the trooper's testimony, the trial court had the duty to make an inquiry before refusing to remove him from the jury. *See State v. Williams*, 643 S.W.2d 832, 834 (Mo.App. 1981); *State v. Ealy*, 624 S.W.2d 490, 493 (Mo.App.1981).

■ It is not the function of the juror qualification form to replace voir dire; voir dire is necessary to discover the state of mind of prospective jurors and determine by examination which harbor bias or prejudice against either party, rendering them unfit to serve as a juror in that case. *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988). The underlying purpose of voir dire is to determine the ability and willingness of venirepersons to follow the law and evidence. *State v. Roberts*, 709 S.W.2d 857, 866 (Mo. banc 1985), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). That purpose is best served by the give-and-take of voir dire, and by observing the demeanor of the venirepersons. Because of this, we determine that the juror qualification form authorized by § 494.415 is not meant to be a substitute for voir dire, and it is more properly used to determine the qualifications, not the attitudes and prejudices of jurors.

Venireman Law's answers on voir dire showed him to be qualified to sit on the jury in the Carl Morehouse case; there was no cause for excusing him, and the court cannot be convicted of error in denying defendant's challenge for cause. If defendant thought venireman Law's answers on the juror qualification form constituted a prior inconsistent statement—inconsistent, that is, with his voir dire answers—then defendant should have confronted venireman Laws with the statement. This defendant did not do. Certainly venireman Law's juror qualification form answers

were not directly contradictory of his voir dire answers. The juror qualification questions were stated in the broadest and most general terms, and had no reference to the specific case with which the juror was confronted upon voir dire.

The judgment is affirmed.