**STATE of Missouri, Plaintiff/Respondent,**

v.

**Antwon CARNES, Defendant/Appellant.**

No. 70069.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 13, 1997.

David C. Hemmingway, Asst. Sp. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for Respondent.

SIMON, Judge.

Antwon Carnes (defendant) appeals from his sentence of five years imprisonment following a jury's verdict finding him guilty of carrying a concealed weapon.

On appeal, defendant contends the trial court erred in: (1) denying his motion to strike juror Murphy for cause based upon her statements that police start off with extra credibility when they take the stand compared to non-police witnesses; (2) denying his objection when the state used five of its six peremptory strikes on black jurors because the state gave a pretextual reason in that the jurors lacked a stake in the court proceedings based upon "transitory employment" and (3) allowing the evidence to be admitted that defendant had in his possession $202.00 when taken into custody because this invited inflammatory speculation that defendant committed uncharged crimes.

Defendant does not contest the sufficiency of the evidence. In a light most favorable to the jury's verdict the record indicates that on January 5, 1995, Officers Hines, Stokes and Davis set up a Street Corner Apprehension Team (SCAT) unit around the area of Angelica and 21st Street. Officer Hines was the designated undercover agent and the other officers were in "rover" and arrest units. Officer Hines asked a woman if she knew where he could buy "a twenty."

The woman got into the unmarked police car with Hines and directed him to a house on 21st Street. Hines gave the woman a twenty dollar bill and she exited the vehicle. The woman approached three individuals standing on the front porch of the house. Two of the individuals went inside but the third, defendant, stayed on the porch. Officer Stokes, who was parked in another unmarked vehicle, testified that the woman and defendant exchanged something in a "hand to hand transaction." After the transaction, the woman brought "a twenty" piece of "crack" cocaine back to Hines who was still sitting in his vehicle. Hines then signaled to the other SCAT units in the area. The woman, defendant and the other two individuals were arrested. A loaded .38 revolver and $202.00 were recovered from defendant.

He was charged with one count of distribution of a controlled substance and one count of carrying a concealed weapon. The state presented the testimony of numerous police officers and a police criminologist. Defendant did not testify but presented the testimony of one witness, Officer Mueller. Officer Mueller prepared the police report of the incident which resulted in defendant's arrest. On direct, Mueller stated that the report showed the "hand-to-hand" transaction occurring between the woman and a third party, not the defendant. On cross, Officer Mueller noted that a mistake had been made and that a correction to the report had been issued to the circuit attorney's office.

The jury found defendant guilty of carrying a concealed weapon, but was unable to reach a verdict as to the distribution charge. Defendant was sentenced to five years imprisonment.

■ In his first point on appeal, defendant contends the trial court erred in denying his motion to strike venireperson Murphy for cause. Venireperson Murphy answered questions concerning the defendant's right not to testify and the presumption of defendant's innocence. Subsequently, the following colloquy occurred between defense counsel and venireperson Murphy:

[Defense]: ... I would like to know how many of you are related or have friends that are police officers ... Miss Murphy?

[Murphy]: Yes, My cousin is a police officer and then I have friends that are police officers.

\* \* \*

[Defense]: Would anything about that or any knowledge that you have, something about that, affect you in this case?

[Murphy]: No, I would hope not, no.

[Defense]: You would hope not. You're not sure?

[Murphy]: No, I'm not sure.

[Defense]: How would it affect you?

[Murphy]: I often only hear one side of the story from them, and these are people that I know and trust so I would believe it to be true.

[Defense]: And even though you haven't heard any evidence in this case, you think it could have an effect on you?

[Murphy]: Yes.

[Defense]: ... Would [the police] be more apt to tell the truth than somebody else who testifies?

[Murphy]: No.

\* \* \*

[Defense]: Okay. Do you think that they have special abilities which would make them better at remembering things or—

[Murphy]: I think that they're in situations, often in situations often where this is their job, this is what they're supposed to do, so, you know, they would be more attuned to what's going on than say someone—Am I making sense? I mean this is what they get paid to do. Let's hope they do it well.

[Defense]: So when a police officer testifies you're going to add some credibility to his testimony because he is a police officer? ...

[Murphy]: I really don't know if I would go that far ...

[Defense]: Would you assume they do their job well?

[Murphy]: Yes.

[Defense]: Could you consider that a police officer would lie?

[Murphy]: Sure.

[Defense]: Under oath?

[Murphy]: Yes.

\* \* \*

[Defense]: You just said that you assumed that a police officer does his job well.

[Murphy]: Correct.

[Defense]: Would that assumption affect your determination about whether that witness is credible?

[Murphy]: Not if it was proven to me ... that they had said something that was a lie or incorrect, then, no, I wouldn't.

[Defense]: Okay. But they would kind of start with something extra?

[Murphy]: Yes.

No further questions were asked of venireperson Murphy.

Defense counsel moved to strike venireperson Murphy for cause because "she indicated that a police officer's testimony would have added credibility," and that she thought that they "would start with something extra." The trial court did not independently question venireperson Murphy and denied the motion because "she ultimately indicated that she would treat a police officer like any other witness." Murphy served on the jury.

In criminal cases, a defendant is entitled to a panel of qualified jurors. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). The trial court is accorded wide discretion in ruling on challenges for cause, but also has a duty to closely evaluate, and at times, independently examine, the qualifications of potential jurors. *Id.* The absence of an independent examination by a trial judge justifies a more searching review by an appellate court of the challenged juror's qualifications. *Id.*

No clear line can be drawn as to when a challenge for cause should or should not be sustained; each case must be judged on its particular facts. *Draper*, 675 S.W.2d at 865. However, a venireperson is disqualified where she expresses a fixed partiality toward police officer testimony because the bias of credibility is contrary to the interest of the litigant. *Id.*

Although errors in the exclusion of potential jurors should always be on the side of caution, reversal is required only if the defendant has been prejudiced. *Draper*, 675 S.W.2d at 865. The defendant has been held not to be prejudiced when the police officer did not provide any elements of the state's case, where the more important evidence came from other witnesses and where the officer did not testify to any truly contested issues. *Id.* However, when the major witnesses against a defendant are the individuals the venireperson is biased towards, the venireperson should be eliminated for cause. *State v. Jones*, 692 S.W.2d 343, 346 (Mo.App. 1985). This is especially true in a case where almost all of the state's evidence comes from police officers. *Draper*, 675 S.W.2d at 865.

Here, all of the state's substantive witnesses were police officers and an employee of the police department. Each officer testified that he had a different vantage point and saw certain portions of the transaction. Offi-

cer Hines stated that he and the woman drove to a house and she purchased drugs from defendant. He was positioned closest to the house and saw the defendant and the woman go inside the house. However, he did not see the "hand-to-hand" transaction nor could he identify defendant.

Officer Stokes, whose job it was to "rove" and make the arrest, was positioned across the street from the home. He stated that he saw the "hand-to-hand" transaction and identified the defendant. He stated that the woman did not enter the home and the transaction occurred on the porch. Officer Davis, who was also a "rover" and on the arrest team, and positioned a bit further away, saw the woman exit the car and approach the porch. He also identified the defendant but stated that he did not see the transaction because he had to "slump down" so as not to be detected by the defendant and spoil the arrest. After the signal, Davis chased defendant into the home and found him in the bathroom flushing the toilet. A gun was found on defendant during the search.

Each element of the offenses, with which defendant was charged, was established by the testimony of the police officers and police criminologist. Venireperson Murphy clearly indicated that a police officer's testimony would start with something extra. She was equivocal in her responses. Moreover, when questioned relevant to the officers credibility, the net effect of her answer indicated that they would "kind of start with something extra." Such a belief demonstrates a bias, making her unqualified, because it is based upon a presumption which is not proper for consideration in assessing a witness' testimony. *State v. Bevly,* 665 S.W.2d 46, 50 (Mo. App.1984). Venireperson Murphy should have been disqualified because she stated a bias towards police officers and the state's case was established primarily upon the testimony of police officers, the group she expressed bias toward. *See Draper,* 675 S.W.2d at 865.

Under these circumstances, the trial court prejudicially erred in failing to strike venireperson Murphy for cause. *See Draper,* 675 S.W.2d at 865. Therefore, we must reverse and remand for a new trial.

■ Because of our disposition of point one, we need only address his third point on appeal which may arise on retrial. In this point, defendant contends the trial court erred in allowing the evidence to be admitted that defendant had in his possession $202.00 when taken into custody because this invited inflammatory speculation that defendant committed uncharged crimes.

Defense counsel made a motion in limine regarding the seized money claiming that it should be excluded from the case because it is not relevant, unfairly prejudices the defendant and serves no purpose other than to show uncharged crimes. The trial court reasoned that since the charge involved delivery and the money was found it is "a relevant fact for the jury for whatever inferences they want to make." However, the court reserved its ruling on the motion in order to research the issue.

Later, the court resumed discussion on the issue and cited *State v. Flenoid,* 838 S.W.2d 462 (Mo.App.1992). The court indicated again that the existence of the money was relevant. Subsequently, the state introduced the $202.00 as exhibit 4 over defense counsel's objection. The jury could not reach a verdict as to the charge of distribution of a controlled substance.

In *Flenoid,* defendant was convicted of possession of a controlled substance and unlawful use of a weapon. On appeal, he asserted that the trial court abused its discretion by admitting, over his objection, evidence of a beeper and currency seized from him during a search. He contended that those items constituted evidence of another crime and that as such, were inadmissible. Allowing for the general principle that evidence of conduct relating to separate crimes is inadmissible, we acknowledged that there are exceptions to the rule, such as when it tends to establish the elements of knowledge or intent. *Flenoid,* 838 S.W.2d at 467. We held that the evidence of the beeper and cash, to the extent it indicated that defendant sold drugs, were circumstances tending to show his knowledge and intent in possessing the cocaine,

and as such were relevant and admissible. *Id.* at 468.

■ Here, the evidence of the cash and the weapon, to the extent it indicated that defendant may have sold drugs, was a circumstance tending to show his knowledge and intent of possessing such drugs and was therefore relevant and admissible. See *Flenoid*, 838 S.W.2d at 468. The admissibility of the evidence is within the sound discretion of the trial court and we will not interfere with a ruling unless there is a clear abuse of discretion. *State v. Ellis*, 853 S.W.2d 440, 445 (Mo.App.1993). We find none. Point denied.

Judgment reversed and remanded.

RHODES RUSSELL and KAROHL, JJ., concur.